## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MONICA KURGAN and MADELINE DIAZ, on behalf of themselves and others similarly situated, ] | Case No. 10-C-1899 |
| ] | |
| ] | Honorable Robert M. Dow, Jr. |
| Plaintiffs, ] | Magistrate Judge Arlander Keys |
| v. ] | |
| ] | |
| CHIRO ONE WELLNESS CENTERS LLC, ] | |
| ] | |
| Defendant. ] | |
| _____ ] | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION
## FOR COLLECTIVE & CLASS CERTIFICATION

Respectfully submitted,

Richard J. (Rex) Burch
James A. Jones
BRUCKNER BURCH PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065

Douglas M. Werman
**Werman Law Offices, PC**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

James B. Zouras
**Stephan Zouras, LLP**
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
212-233-1550
312-233-1560 f

# Table of Contents

1. Introduction..........................................................................................................1

2. Factual Background ..............................................................................................1

   A. The CT Position is Standardized..................................................................2

   B. Chiro One Treats CTs as Homogeneous for Exemption Purposes. ...................3

   C. Chiro One Concedes CTs Are Entitled to Overtime Pay...................................4

3. The Proposed Class Definitions..............................................................................5

4. Argument ............................................................................................................5

   A. The Court Should Conditionally Certify Plaintiffs' FLSA Claims ......................5

      1. Applicable Legal Standard. ....................................................................5

      2. CTs Were Victims of a Common Policy that Violated the Law. .................7

      3. CTs Are Also Similarly Situated in Terms of Job Duties & Pay Provisions. ......................8

   B. Plaintiffs' IMWL Claim Should be Certified as a Class Action..........................10

      1. Applicable Legal Standard. ....................................................................10

      2. Certification Under Rule 23(a). ...............................................................12

      3. Plaintiffs' IMWL Claim Satisfies the Requirements of Rule 23(b)..................17

      4. Alternatively, Certification of Liability Issues is Appropriate under Rule 23(c)(4) ...........28

5. Conclusion..........................................................................................................32

# Table of Authorities

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
269 F.R.D. 252 (S.D.N.Y. 2010) ...................................................................29

*Acosta v. Scott Labor LLC*, 2006 WL 27118 (N.D. Ill. Jan. 3, 2006) ...................................12

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................17

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ...................................................................11, 21

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946) ...................................................................25, 26, 32

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) ...................................................................20, 21

*Barefield v. Vill. of Winnetka*,
81 F.3d 704 (7th Cir. 1996) ...................................................................7

*Barragan v. Evanger's Dog & Cat Food Co., Inc.*,
259 F.R.D. 330 (N.D. Ill. 2009) ...................................................................12, 13, 15, 18

*Bergman v. Kindred Healthcare, Inc.*,
2013 WL 2632596 (N.D. Ill. June 11, 2013) ...................................................................5

*Betancourt v. Maxim Healthcare Servs., Inc.*,
2011 WL 1548964 (N.D. Ill. Apr. 21, 2011) ...................................................................6

*Braddock v. Madison County*,
34 F. Supp.2d 1098 (S.D. Ind. 1998) ...................................................................10

*Brown v. Family Dollar Stores of IN, LP*,
534 F.3d 593 (7th Cir. 2008) ...................................................................25

*Butler v. Sears, Roebuck & Co.*,
702 F.3d 359 (7th Cir. 2012) ...................................................................22

*Butler v. Sears, Roebuck & Co.*,
~F.3d.~, 2013 WL 4478200 (7th Cir. Aug. 22, 2013) ...................................................................passim

*Chavez v. Don Stoltzner Mason Contractor, Inc.,*
 272 F.R.D. 450 (N.D. Ill. 2011) ........................................................................................27

*Cicilline v. Jewel Food Stores, Inc.,*
 542 F. Supp. 2d 831 (N.D. Ill. 2008) ........................................................................... 12, 15

*Clark v. Honey-Jam Cafe, LLC,*
 2013 WL 1789519 (N.D. Ill. Mar. 21, 2013)................................................................. 11, 22

*Comcast Corp. v. Behrend,*
 133 S. Ct. 1426  (2013)......................................................................................18, 19, 20, 23

*Corning Glass Works v. Brennan,*
 417 U.S. 188 (1974)..............................................................................................................7

*Crawford v. Equifax Payment Servs., Inc.,*
 201 F.3d 877 (7th Cir. 2000) ............................................................................................28

*DeMarco v. Nw. Mem'l Healthcare,*
 2011 WL 3510896 (N.D. Ill. Aug. 10, 2011)........................................................................6

*Doe v. Guardian Life Ins. Co. of Am.,*
 145 F.R.D. 466 (N.D. Ill. 1992) ........................................................................................12

*Driver v. AppleIllinois, LLC,*
 2012 WL 689169 (N.D. Ill. Mar. 2, 2012)..................................................................... 11, 26

*Driver v. AppleIllinois, LLC,*
 265 F.R.D. 293 (N.D. Ill. 2010) ................................................................................... 11, 12

*Driver v. AppleIllinois, LLC,*
 890 F. Supp. 2d 1008 (N.D. Ill. 2012) ..............................................................................25

*Ervin v. OS Rest. Servs., Inc.,*
 632 F.3d 971 (7th Cir. 2011) ...............................................................................................5

*Espenscheid v. DirectSat USA, LLC,* 2011 WL 2009967, *7 (W.D. Wis. May 23, 2011) *amended,*
 2011 WL 2132975 (W.D. Wis. May 27, 2011) ..................................................................23

*Espenscheid v. DirectSat USA, LLC,*
 705 F.3d 770 (7th Cir. 2013) ......................................................................................passim

*Flores v. Lifeway Foods, Inc.*,
  289 F. Supp. 2d 1042 (N.D. Ill. 2003) ........................................................6

*Fulghum v. Embarq Corp.*,
  2011 WL 13615 (D. Kan. Jan. 4, 2011) ......................................................30

*Gambo v. Lucent Technologies, Inc.*,
  2005 WL 3542485 (N.D. Ill. Dec. 22, 2005) .............................................6

*Gaspar v. Linvatec Corp.*,
  167 F.R.D. 51 (N.D. Ill. 1996) ....................................................................15

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ......................................................................................11

*Gunawan v. Sake Sushi Restaurant*,
  897 F.Supp.2d 76 (E.D.N.Y. 2012) ............................................................10

*Harris v. comScore, Inc.*,
  2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) ..............................................22

*Haschak v. Fox & Hound Rest. Grp.*,
  2012 WL 5509617 (N.D. Ill. Nov. 14, 2012) ...........................................11

*Healy v. Int'l Bhd. of Elec. Workers, Local Union No. 134*,
  ~F.Supp.2d.~, 2013 WL 4494685 (N.D. Ill. Aug. 22, 2013) ................21

*Hoffman Elec., Inc. v. Emerson Elec. Co.*,
  754 F. Supp. 1070 (W.D. Pa. 1991) ...........................................................27

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) ........................................................................................5

*Hundt v. DirectSat USA, LLC*,
  2010 WL 2079585 (N.D. Ill. May 24, 2010) .............................................9

*In re Allstate Ins. Co.*,
  400 F.3d 505 (7th Cir. 2005) .......................................................................30

*In re Motor Fuel Temperature Sales Practices Litigation*,
  2013 WL 1397125 (D. Kan. April 5, 2013) ..............................................31

iv

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*,

  ~F.3d.~, 2013 WL 3746205 ......................................................................................31

*Jacob v. Duane Reade, Inc.*,

  2013 WL 4028147 (S.D.N.Y. August 8, 2013) ........................................................31

*Jirak v. Abbott Laboratories, Inc.*,

  566 F. Supp. 2d 845 (N.D. Ill. 2008) .....................................................................6

*Kartman v. State Farm Mut. Auto. Ins. Co.*,

  634 F.3d 883(7th Cir. 2011) ..................................................................................30

*Keele v. Wexler*,

  149 F.3d 589 (7th Cir. 1998) .................................................................... 11, 13, 15

*Kelly v. Bluegreen Corp.*,

  256 F.R.D. 626 (W.D. Wis. 2009) ............................................................................9

*Kernats v. Comcast Corp.*,

  2010 WL 4193219 (N.D. Ill. Oct. 20, 2010) ...........................................................11

*Krueger v. New York Tel. Co.*,

  163 F.R.D. 433 (S.D.N.Y. 1995) ...........................................................................16

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,

  2000 WL 1774091 (N.D. Ill. Dec. 1, 2000) ...........................................................16

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,

  *2004 WL 1882449 (N.D. Ill. Aug. 18, 2004)* .........................................................25

*Mace v. Van Ru Credit Corp.*,

  109 F.3d 338 (7th Cir. 1997) ................................................................................28

*Marshall v. Amsted Indus., Inc.*,

  2010 WL 2404340 (S.D. Ill. June 16, 2010) ............................................................6

*Martens v. Smith Barney, Inc.*,

  181 F.R.D. 243 (S.D.N.Y. 1998) ...........................................................................16

*Messner v. Northshore Univ. HealthSystem*,

  669 F.3d 802 (7th Cir. 2012) .................................................................... 10, 11, 17

*Mielke v. Laidlaw Transit, Inc.*,
  313 F. Supp. 2d 759 n.2 (N.D. Ill. 2004) ................................................................5

*Olmsted v. Residential Plus Mortgage Corp.*,
  2008 WL 5157973 (N.D. Ill. Dec. 9, 2008) .........................................................8

*Pefanis v. Westway Diner, Inc.*,
  2008 WL 4546526 (S.D.N.Y. Oct. 8, 2008) .......................................................10

*Pella Corp. v. Saltzman*,
  606 F.3d 391 (7th Cir. 2010) .............................................................................31

*Reich v. S. New England Telecommunications Corp.*,
  121 F.3d 58 n.3 (2d Cir. 1997) ..........................................................................26

*Retired Chicago Police Ass'n v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993).......................................................................... 11, 15

*Robles v. Corporate Receivables, Inc.*,
  220 F.R.D. 306 (N.D. Ill. 2004) .........................................................................16

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ............................................................................15

*Rottman v. Old Second Bancorp, Inc.*,
  735 F. Supp. 2d 988 (N.D. Ill. 2010) ...................................................................5

*Russell v. Illinois Bell Tel. Co.*,
  575 F. Supp. 2d 930 (N.D. Ill. 2008) ............................................................ 5, 6, 7

*Salmans v. Byron Udell & Associates, Inc.*,
  2013 WL 707992 (N.D. Ill. Feb. 26, 2013) ..........................................................9

*Schaefer v. Walker Bros. Enters., Inc.*,
  2012 U.S. Dist. LEXIS 65432 (N.D. Ill. May 7, 2012)..........................................6

*Schmidt v. Smith & Wollensky, LLC*,
  268 F.R.D. 323 (N.D. Ill. 2010) .........................................................................11

*Scholes v. Stone, McGuire & Benjamin*,
  143 F.R.D. 181 (N.D. Ill. 1992) .........................................................................27

*Smallwood v. Illinois Bell Tel. Co.,*

   710 F. Supp. 2d 746 (N.D. Ill. 2010) ......................................................................6

*Szabo v. Bridgeport Machines, Inc.,*

   249 F.3d 672 (7th Cir. 2001) ...............................................................................11

*Vaughan v. Mortgage Source LLC,*

   2010 WL 1528521 (E.D.N.Y. Apr. 14, 2010)......................................................10

*Walker v. Bankers Life & Cas. Co.,*

   2007 WL 2903180 (N.D. Ill. Oct. 1, 2007) .........................................................13

*Wallace v. Powell,*

   2013 WL 2042369 (M.D. Pa. May 14, 2013) .......................................................31

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).....................11, 13, 14, 18

*Yon v. Positive Connections, Inc.,*

   2005 WL 628016 (N.D. Ill. Feb. 2, 2005) ...........................................................12

## Statutes

### Federal

29 U.S.C.A. § 207(a).........................................................................................................7

29 U.S.C.A. § 211(c).........................................................................................................7

29 U.S.C.A. § 216(b) ...............................................................................................5, 8, 32

29 U.S.C.A. § 255(a).......................................................................................................10

### State

820 ILCS 105/12 ..............................................................................................................5

820 ILCS 105/4(a) ............................................................................................................7

820 ILCS 105/8 ...........................................................................................................7, 25

## Rules

Fed. R. Civ. P. 8(c) ................................................................................................................10

Rule 23(a) ..........................................................................................................................passim

Rule 23(a)(l) ............................................................................................................................12

Rule 23(a)(2) ...........................................................................................................................13

Rule 23(a)(3) ...........................................................................................................................15

Rule 23(a)(4) ...........................................................................................................................15

Rule 23(b) ................................................................................................................... 17, 29, 30

Rule 23(c)(4) ......................................................................................................................passim

Rule 23(f) ................................................................................................................................23

## Other Authorities

6 NEWBERG ON CLASS ACTIONS § 18:7 ..................................................................29

7AA Wright & Miller, Federal Practice and Procedure § 1778 (3d ed. 2011)................17

7B Wright & Miller FEDERAL PRACTICE AND PROCEDURE § 1790 ...................29

9 MANUAL ON COMPLEX LITIGATION 4th § 21.24 ..............................................30

## 1.    INTRODUCTION.

Monica Kurgan and Madeline Diaz worked for Chiro One Wellness Centers, LLC (Chiro One) as Chiropractic Assistants (CAs) and Chiropractic Technicians (CTs) (collectively, "CTs"). Until December 17, 2012, Chiro One failed to pay CTs overtime for hours worked in excess of 40 hours in a workweek. Instead, Chiro One paid all CTs a semi-monthly salary and uniformly treated CTs as exempt from federal and state overtime laws.[1] After this lawsuit was filed, Chiro One reclassified the CT job position as non-exempt and uniformly began paying all such persons overtime wages.

But despite filing two answers, Chiro One failed to assert the affirmative defense that CTs were exempt from the overtime pay provisions of the FLSA and IMWL. Thus, Chiro One waived any argument that Plaintiffs – and the proposed class of similarly situated CTs – were exempt from the overtime pay provisions of the FLSA and IMWL. Stated another way, the question of whether Plaintiffs and all other CTs were entitled to overtime pay under the FLSA and IMWL can be decided in a single stroke.

As explained below, this Court should conditionally certify Plaintiffs' FLSA claims and certify Plaintiffs' IMWL claim as a class action under Fed. R. Civ. P. 23.

## 2.    FACTUAL BACKGROUND

Chiro One is a limited liability corporation headquartered in Oak Brook, Illinois, that operates 75 "wellness centers" providing chiropractic services in Illinois, Kentucky and Texas. [Ex. 22, Jones Dec., ¶ 15, Ex. 1]. Chiro One has 57 locations in Illinois, 12 locations in Kentucky, and

---

[1]    Specifically, the Fair Labor Standards Act (FLSA), 29 U.S.C.A. § 201, *et seq.* and the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1 et seq.

6 locations in Texas. [Ex. 22, Jones Dec., ¶ 15, Exs. 2-4]. Chiro One owns each location; they are not franchises.  [Ex. 5, Wang Depo., p. 13].

## A.     The CT Position is Standardized.

Chiro One locations have a standardized hierarchy. [Ex. 22, Jones Dec., ¶ 15, Exs. 20, 21; Ex. 5, Wang Depo., pp, 19-20]. Each location is staffed with at least one Chiropractor and, typically, three or more CTs. [Ex. 5, Wang Depo, pp. 14-18]. In the past, staffing also included CAs. [Ex. 5, Wang Depo., pp. 16-17]. The CA job duties were completely subsumed within those of the CT. [*Compare* Ex. 11, CA Job Description *with* Ex. 12, CT Job Description]. Eventually, Chiro One simply "incorporated" the CA position and job duties into the CT "role." [Ex. 5, Wang Depo., pp. 16-17].[2] Therefore, to simplify the exposition, Plaintiffs refer to the positions collectively as "CTs."

Before being assigned to a Chiro One location, CTs receive four to eight weeks of centralized, uniform training at Chiro One's corporate headquarters in Oak Brook, Illinois. [Ex. 5, Wang Depo., pp. 24-25, 47; Ex. 6, Kurgan Dec., ¶ 4; Ex. 7, Diaz Dec., ¶ 4; Ex. 8, Effort Dec. ¶ 4; Ex. 10, Waite Dec., ¶¶ 3; Ex. 9, Walenga Dec., ¶ 3; Ex. 26, O'Neill Dec., ¶ 3]. During training, CTs are paid on an hourly basis. [Ex. 22, Jones Dec., ¶ 15; Exs.11-16; Ex. 6, Kurgan Dec., ¶ 6; Ex. 7, Diaz Dec., ¶ 6; Ex. 8, Effort Dec. ¶ 6; Ex. 26, O'Neill Dec., ¶ 4]. After training, CTs are assigned to a Chiro One location, paid a semi-monthly salary, and treated by Chiro One as exempt

---

[2]     Plaintiffs Kurgan and Diaz both worked at Chiro One in both the CA and CT positions.  [Ex. 7, Diaz Dec. ¶ 3; ECF No. 105.3, Kurgan Depo., at pp. 12,14-15, 20-21, 23, 32, 46, 92; Ex. 22, Jones Dec., ¶ 15, Exs. 28, 29]. Both went through Chiro One's standard training program and took positions as CAs. [Ex. 7, Diaz Dec., ¶¶ 4-5; Ex. 6, Kurgan Dec., ¶¶ 4-5; ECF No. 105.3, Kurgan Depo., at pp. 20-21]. When converted to the CT position, Plaintiffs were required to take classes for x-ray certification (which related solely to their "technician" duties), but  were not required to undergo any further training or retraining regarding the basic duties of a CT. [Ex. 7, Diaz Dec., ¶¶ 4-5; Ex. 6, Kurgan Dec., ¶¶ 4-5; ECF No. 105.3, Kurgan Depo., at pp. 36-37].

under the FLSA and IMWL. [Ex. 5, Wang Depo., pp. 54-56; Ex. 22, Jones Dec., ¶ 15, Exs. 15, 16; Ex. 6, Kurgan Dec., ¶¶ 4, 7, 13; Ex. 7, Diaz Dec., ¶¶ 4, 7, 16; Ex. 8, Effort Dec. ¶¶ 4, 7, 18; Ex. 9, Wallenga Dec., ¶¶ 3, 8, 11; Ex. 10, Waite Dec., ¶¶ 3, 12, 15; Ex. 26, O'Neill Dec., ¶¶ 3, 5, 12].

Chiro One employs standardized corporate policies and procedures governing CTs. [Ex. 5, Wang Depo., pp. 47 – 48; Ex. 6, Kurgan Dec., ¶ 5; Ex. 7, Diaz Dec., ¶ 5; Ex. 8, Effort Dec., ¶ 5]. The job duties of CTs are uniform throughout Chiro One. [Ex. 22, Jones Dec., ¶ 15, Exs. 11, 12, 18, 19; Ex. 6, Kurgan Dec., ¶¶ 4, 5, 8, 10; Ex. 7, Diaz Dec., ¶¶ 4, 5, 8, 10, 11, 13; Ex. 8, Effort Dec., ¶¶ 5, 8-15; Ex. 9, Walenga Dec., ¶¶ 4 – 7; Ex. 10, Waite Dec., ¶¶ 6 – 11]. This uniformity is highlighted by Chiro One's use of "checklists" which detail all of the duties CTs are expected to perform each day. [Ex. 22, Jones Dec., ¶ 15; Exs. 18, 19; Ex. 6, Kurgan Dec., ¶ 10; Ex. 7, Diaz Dec., ¶¶ 10, 13; Ex. 8, Effort Dec., ¶¶ 10, 14]. Each CT is expected to fill out this checklist every day rather than rely on her/his memory. [Ex. 22, Jones Dec., ¶ 15, Exs. 17; Ex. 6, Kurgan Dec., ¶ 10; Ex. 7, Diaz Dec., ¶¶ 10, 13; Ex. 8, Effort Dec., ¶¶ 10, 14]. CTs are also provided with comprehensive "scripts" for dealing with virtually every situation involving customers. [Ex. 5, Wang Depo., pp. 32-47; Ex. 6, Kurgan Dec., ¶ 5; Ex. 7, Diaz Dec., ¶ 5; Ex. 8, Effort Dec. ¶ 5]. Chiro One's express desire was to "standardize the delivery of [its] services." [Ex. 5, Wang Depo., pp. 32-33].

## B.    Chiro One Treats CTs as Homogeneous for Exemption Purposes.

The decision to treat CTs as exempt was made at the corporate level. [Ex. 5, Wang Depo., p. 54; Ex. 9, Walenga Dec., ¶ 13]. It was uniformly applied throughout the company. [Ex. 5, Wang Depo., p. 54; Ex. 9, Walenga Dec., ¶ 13]. At the end of training, CTs were told they were changing from non-exempt, hourly employees to salaried, exempt employees. [Ex. 15, Employee

3

Change of Status]. Thus, after training, CTs were not paid overtime for any hours worked in excess of 40 in any workweek. [Ex. 5, Wang Depo., pp. 54-55; Ex. 6, Kurgan Dec., ¶¶ 11-13; Ex. 7, Diaz Dec., ¶¶ 15-16; Ex. 8, Effort Dec. ¶¶ 17-18; Ex. 10, Waite Dec., ¶¶ 13, 15; Ex. 9, Walenga Dec., ¶¶ 9, 11; Ex. 26, O'Neill Dec., ¶¶ 10, 12].

For most of the relevant period, Chiro One did not keep records of the hours worked by CTs. [Ex. 5, Wang Depo., pp. 67-68; Ex. 6, Kurgan Dec., ¶ 12; Ex. 7, Diaz Dec., ¶ 14; Ex. 8, Effort Dec. ¶ 16; Ex. 10, Waite Dec., ¶14; Ex. 9, Walenga Dec., ¶ 10].]. More than a year and a half after this lawsuit was filed, Chiro One began tracking the hours worked by CTs. [Ex. 5, Wang Depo., pp. 67-68]. But Chiro One still did not *pay* CTs for overtime worked until December 2012, when Chiro One finally reclassified all of its CTs[3] from exempt to non-exempt. [Ex. 5, Wang Depo., pp. 54-57, 67-68; Ex. 26, O'Neill Dec., ¶¶ 11-15].

## C.     Chiro One Concedes CTs Are Entitled to Overtime Pay.

On March 26, 2010, Plaintiffs filed their Original Complaint against Chiro One, stating claims under the IMWL. [ECF No. 1]. Prior to Chiro One filing an answer, Plaintiffs amended their complaint to add claims under the FLSA. [ECF No. 7]. On October 7, 2010, Chiro One filed its Answer. [ECF No. 23]. Chiro One did not plead any affirmative defenses. *Id.* Specifically, Chiro One did not plead the affirmative defenses of exemption, good faith, or statute of limitations. *Id.* On September 15, 2011, Plaintiffs filed a Second Amended Complaint. [ECF No. 58]. Chiro One filed its Answer to Plaintiffs' Second Amended Complaint on October 7, 2011 [ECF No. 61], and once again failed to plead any affirmative defenses, including exemption, good faith, or the statute of limitations. On May 23, 2012, Chiro One stated on the record it would not raise any

---

[3]      The Chiropractic Assistant position had been merged with Chiropractic Technician by this time.

4

affirmative defense not already raised, and this Court entered an Order barring Chiro One from

doing so. [ECF No. 94].

## 3.    THE PROPOSED CLASS DEFINITIONS

Plaintiffs seek conditional certification of their FLSA claim and request notice be sent to:

> All Chiropractic Assistants and Chiropractic Technicians employed
> by Chiro One during the period April 21, 2007 to December 17,
> 2012.

Plaintiffs also seek to certify their IMWL overtime claims as a class action pursuant to Rule

23(b)(3) or, in the alternative, Rule 23(c)(4). Plaintiffs' proposed class is:

> All Chiropractic Assistants and Chiropractic Technicians employed
> by Chiro One in the State of Illinois during the period March 25,
> 2007 to December 17, 2012.

The statute of limitations for an IMWL claim is three years. 820 ILCS 105/12.

## 4.    ARGUMENT

### A.    The Court Should Conditionally Certify Plaintiffs' FLSA Claims

#### 1.    Applicable Legal Standard.

The FLSA expressly provides for representative actions. 29 U.S.C.A. § 216(b) *Hoffmann-La*

*Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (plaintiffs may bring a collective FLSA action on

behalf of themselves "and other employees similarly situated."). In this Circuit, such actions

typically proceed under a two-step process. *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933

(N.D. Ill. 2008); *see also, Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011).[4]

---

[4]    *See aso, Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) ("courts in this district and around the country have settled on a two-step procedure for dealing with collective actions under the FLSA.") (internal citations omitted); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 n.2 (N.D. Ill. 2004) (most courts use the two-step method) (collecting cases); *Bergman v. Kindred Healthcare, Inc.*, 2013 WL 2632596, *3 (N.D. Ill. June 11, 2013) (utilizing two-step method).

At the first step, sometimes called the conditional certification or notice stage, a plaintiff is required to show there are "similarly situated employees who are potential claimants." *Betancourt v. Maxim Healthcare Servs., Inc.*, 2011 WL 1548964, *4 (N.D. Ill. Apr. 21, 2011); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010). A plaintiff can do this by making a "modest factual showing" that he and other potential plaintiffs were victims of a common unlawful policy or plan. *Smallwood*, 710 F.Supp.2d at 750 (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). "[A] plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Gambo v. Lucent Technologies, Inc.*, 2005 WL 3542485, *4 (N.D. Ill. Dec. 22, 2005).

In evaluating conditional certification, the Court does not resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations. *Marshall v. Amsted Indus., Inc.*, 2010 WL 2404340, *5 (S.D. Ill. June 16, 2010). If a plaintiff satisfies this modest factual showing, the Court will conditionally certify the collective action and will authorize notice of the action to potential plaintiffs who may want to join. *DeMarco v. Nw. Mem'l Healthcare*, 2011 WL 3510896, *1 (N.D. Ill. Aug. 10, 2011); *Smallwood*, 710 F.Supp.2d at 750. The standard for conditional certification is "lenient." *Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008); *Schaefer v. Walker Bros. Enters., Inc.*, 2012 U.S. Dist. LEXIS 65432, *2 (N.D. Ill. May 7, 2012) (minimal showing necessary for notice to issue; "similarly situated" showing lenient); *Petersen v. Marsh USA, Inc.*, 2010 WL 5423734, *2 (N.D. Ill. Dec. 23, 2010) (citing *Russell*, 575 F. Supp. 2d at 933).[5]

---

[5] The second step occurs after the opt-in period and further discovery. There, at a defendant's request, the Court asks "whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Smallwood*, 710 F. Supp. 2d at 750 (internal

Plaintiffs meet the "modest factual showing" required for conditional certification as they were unquestionably subject to *at least* one common policy that violated the law - Chiro One's uniform classification of CTs as exempt. [Ex. 5, Wang Depo., p. 54; Ex. 9, Walenga Dec., ¶ 13].

## 2. CTs Were Victims of a Common Policy that Violated the Law.

Employees are presumptively entitled to overtime to all hours worked in excess of 40 in a week. 29 U.S.C.A. § 207(a); 820 ILCS 105/4(a). To ensure employers meet this obligation, both federal and state laws require employers to track the hours worked by their employees. 29 U.S.C.A. § 211(c); 820 ILCS 105/8.

But until December 2011, Chiro One did not keep track of the hours CTs were working. [Ex. 5, Wang Depo., pp. 67-68; Ex. 6, Kurgan Dec., ¶ 12; Ex. 7, Diaz Dec., ¶ 14; Ex. 8, Effort Dec. ¶ 16; Ex. 10, Waite Dec., ¶14; Ex. 9, Walenga Dec., ¶ 10]. And even after it began recording overtime worked by CTs, Chiro One did not start *paying* CTs overtime until December 2012 - when it reclassified CTs as non-exempt companywide. [Ex. 5, Wang Depo., pp. 54-57, 67-68; Ex. 26, O'Neill Dec., ¶¶ 11-15]. The only possible excuse for these unlawful practices would be for Chiro One to plead and prove that these workers were exempt from the FLSA's requirements. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Barefield v. Vill. of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996) (exemption is an affirmative defense the employer must plead and prove).

Chiro One, however, failed to plead exemption as an affirmative defense and the Court has barred it from doing so now. [ECF No. 94].[6] By waiving its exemption defense, Chiro One in effect admitted Plaintiffs and the class members were uniformly misclassified. This is sufficient to

---

quotations omitted). If there is not sufficient similarity, the Court may reconsider its decision to allow the case to proceed as a collective action and dismiss the opt-in plaintiffs' claims without prejudice. *Russell*, 575 F. Supp. 2d at 933; *Marshall*, 2010 WL 2404340, *5.

[6]     Additionally, Chiro One failed to plead, and thus has waived, the affirmative defenses of "good faith" and the statute of limitations under the FLSA.

warrant conditional certification under § 216(b). *Betancourt*, 2011 WL 1548964, *6 (granting conditional certification where defendant uniformly classified plaintiffs' positions as exempt regardless of any potential differences in their day-to-day job duties); *see also Olmsted v. Residential Plus Mortgage Corp.*, 2008 WL 5157973, *3 (N.D. Ill. Dec. 9, 2008) (granting conditional certification where plaintiff alleged that defendants "routinely misclassified employees as exempt from FLSA requirements"). Moreover, the 2012 uniform reclassification of CTs from exempt to non-exempt provides evidence of a common policy affecting plaintiffs and class members supporting conditional certification. *Petersen*, 2010 WL 5423734, *5.

### 3.    CTs Are Also Similarly Situated in Terms of Job Duties & Pay Provisions.

As discussed more fully in Section 2(A), *supra*, Chiro One's CTs are also similarly situated with regard to their job duties (which are uniform throughout Chiro One).[7] Chiro One employs : (1) a uniform job description for all CTs;[8] (2) uniform trainging ;[9] (3) daily job duty checklists[10] (to be used in place of an employee's memory);[11] and (4) extensive employee "scripts," as it seeks to "standardize" the delivery of its services.[12]

---

[7]    [Ex. 22, Jones Dec., ¶ 15, Exs. 11, 12, 18, 19; Ex. 6, Kurgan Dec., ¶¶ 4, 5, 8, 10; Ex. 7, Diaz Dec., ¶¶ 4, 5, 8, 10, 11, 13; Ex. 8, Effort Dec., ¶¶ 5, 8-15; Ex. 9, Walenga Dec., ¶¶ 4–7; Ex. 10, Waite Dec., ¶¶ 6–11].

[8]    [Ex. 22, Jones Dec., ¶ 15, Exs. 11, 12; Ex. 6, Kurgan Dec., ¶ 8; Ex. 7, Diaz Dec., ¶¶ 8, 12; Ex. 8, Effort Dec. ¶¶ 8, 12; Ex. 9, Waite Dec., ¶¶ 6, 9; Ex. 10, Walenga Dec., ¶¶ 4, 6; Ex. 26, O'Neill Dec., ¶ 6].

[9]    [Ex. 5, Wang Depo., pp. 24-25, 47 ; Ex. 6, Kurgan Dec., ¶ 4; Ex. 7, Diaz Dec., ¶ 4; Ex. 8, Effort Dec. ¶ 4; Ex. 10, Waite Dec., ¶¶ 3, 4; Ex. 9, Walenga Dec., ¶ 3; Ex. 26, O'Neill Dec., ¶ 3].

[10]    [Ex. 22, Jones Dec., ¶ 15, Exs. 18, 19; Ex. 6, Kurgan Dec., ¶ 10; Ex. 7, Diaz Dec., ¶¶ 10, 13; Ex. 8, Effort Dec., ¶¶ 10, 14].

[11]    [Ex. 22, Jones Dec., ¶ 15, Ex. 17; Ex. 6, Kurgan Dec., ¶ 10; Ex. 7, Diaz Dec., ¶¶ 10, 13; Ex. 8, Effort Dec., ¶¶ 10, 14; Ex. 26, O'Neill Dec., ¶ 9].

12    Q. Why does Chiro One use these scripts?

A. So we can standardize the delivery of our service.
Ex. 5, Wang Depo., p. 33.

8

The job duties are so standardized that CTs must use scripts for virtually every interaction a CT might have with a patient[13] – from the initial telephone call scheduling an appointment, to phone calls rescheduling appointments, to the patient's initial visit and each subsequent visit, to giving an office tour, to taking medical histories, to teaching the patient the physical exercises a doctor has prescribed for them. [Ex. 5, Wang Depo., pp. 32-47; Ex. 6, Kurgan Dec., ¶ 5; Ex. 7, Diaz Dec., ¶ 5; Ex. 8, Effort Dec. ¶ 5]. CTs are expected to know and use these scripts "word for word." [Ex. 5, Wang Depo., pp. 35, 39; Ex. 6, Kurgan Dec., ¶ 5; Ex. 7, Diaz Dec., ¶ 5; Ex. 8, Effort Dec. ¶ 5]. Given Chiro One's express desire for "standardized" services by CTs throughout its organization, and the use of common job descriptions, word for word scripts, and uniform daily checklists, there can be no dispute that CTs throughout Chiro One are similarly situated in their job duties. The record simply does not allow otherwise. *See Salmans v. Byron Udell & Associates, Inc.*, 2013 WL 707992, *4 (N.D. Ill. Feb. 26, 2013) (similarly situated demonstrated by similarity of job duites); *Hundt v. DirectSat USA, LLC*, 2010 WL 2079585, *4 (N.D. Ill. May 24, 2010) (same); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629 (W.D. Wis. 2009) (same).[14]

CTs were also similarly situated with respect to pay provisions. All CTs were paid on a salaried basis, with no overtime compensation, until December 2012. [Ex. 22, Jones Dec., ¶ 15,

---

[13]    Q. Would it be fair to say that Chiro One has attempted to identify the most common interactions that CAs or CTs would have with patients and provide scripts for those interactions?

    A. Yes.
Ex. 5, Wang Depo., p. 33.

[14]    The positions of Chiropractic Assistant and Chiropractic Technician are similarly situated as well. As detailed in Section 2(A), *supra*, the two positions had heavily overlapping and almost identical job duties. *Compare* Exs. 11 and 12. Both positions went through uniform training [Ex. 5, Wang Depo., pp. 24 – 25, 4714; Ex. 6, Kurgan Dec., ¶ 4; Ex. 7, Diaz Dec., ¶ 4; Ex. 8, Effort Dec. ¶ 4; Ex. 10, Waite Dec., ¶¶ 3, 4; Ex. 9, Walenga Dec., ¶ 3; Ex. 26, O'Neill Dec., ¶ 3], and both were paid a salary and treated as exempt following the completion of their training. [Ex. 6, Kurgan Dec., ¶¶ 7, 13; Ex. 7, Diaz Dec., ¶¶ 7, 16; Ex. 8, Effort Dec. ¶¶ 7, 18]. Indeed, the two positions were so similar that they became a single position. [Ex. 5, Wang Depo., pp. 16-17].

Exs.11, 12, 15, 16, 24, 25, 29; Ex. 7, Diaz Dec., ¶¶ 7, 11, 13; Ex. 6, Kurgan Dec., ¶¶ 7, 11, 13; Ex. 8, Effort Dec., ¶¶ 7, 17, 18; Ex. 9, Walenga Dec. ¶¶ 8, 9, 11; Ex. 10, Waite Dec., 12, 13, 15; Ex. 26, O'Neill Dec. ¶¶ 5, 10, 12, 13-15]. In addition, Chiro One did not bother to begin tracking the hours worked by CTs until late 2011 (but did not pay them overtime until December 2012). [Ex. 5, Wang Depo., pp. 67-68; Ex. 26, O'Neill Dec., ¶¶ 11-13]. *Vaughan v. Mortgage Source LLC*, 2010 WL 1528521, *4-5 (E.D.N.Y. Apr. 14, 2010) (facts supporting finding of "similarly situated" included uniform failure to record plaintiffs' time worked); *Pefanis v. Westway Diner, Inc.*, 2008 WL 4546526, *1 (S.D.N.Y. Oct. 8, 2008)(same). Because Plaintiffs are similarly situated, conditional certification is appropriate.[15]

## B. Plaintiffs' IMWL Claim Should be Certified as a Class Action.

### 1. Applicable Legal Standard.

Class certification requires a two-step analysis. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012). First, the plaintiff must demonstrate the action satisfies the four threshold requirements of Rule 23(a): (1) numerosity (the class must be so large that individual joinder is 'impracticable'); (2) commonality (questions of law or fact common to the class); (3) typicality (named plaintiff claims are typical of the class's claims); and (4) adequacy of representation (the class representative must be able to fairly and adequately protect class interests). *Id.*; Fed. R. Civ. P. 23(a)(1)-(4). When certification is sought under Rule 23(b)(3), as it is

---

[15]    The limitations period for FLSA claims is typically either two or three years, depending on whether the employer's violation was willful. 29 U.S.C. § 255(a). However, Chiro One did not plead the statute of limitations, an affirmative defense that is waived if not pled. Fed. R. Civ. P. 8(c); *Gunawan v. Sake Sushi Restaurant*, 897 F.Supp.2d 76, 87 (E.D.N.Y. 2012) (failure to plead statute of limitations in FLSA case waived that defense); *Braddock v. Madison County*, 34 F. Supp.2d 1098, 1112 (S.D. Ind. 1998) (defendant waived statute of limitations defense in FLSA case by failing to plead it in answer). Moreover, Chiro One is barred from asserting any affirmative defenses it has not already pled. (ECF No. 94). Thus, Chiro One has waived any statute of limitations defense. Accordingly, a full three year period should be used for the notice process.

here, proponents of the class must also show: (1) the questions of law or fact common to the members of the proposed class predominate over questions affecting on only individual class members; and (2) a class action is superior to other available methods of resolving the controversy. *Messner*, 669 F.3d at 811.

Plaintiffs bear the burden of showing that class certification is appropriate. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161(1982); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The district court possesses broad discretion in determining whether that burden is met. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998).

In evaluating a certification motion, the court's analysis must be "rigorous," and that rigor may "entail some overlap with the merits." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001); *Kernats v. Comcast Corp.*, 2010 WL 4193219, *3 (N.D. Ill. Oct. 20, 2010). "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc.*, 133 S. Ct. at 1195. That is because class certification turns on whether the requirements of Rule 23 are met, not on the ultimate resolution of the merits. *Falcon*, 457 U.S. at 161; *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 300 (N.D. Ill. 2010).

Courts in this District routinely grant class certification of wage and hour claims. *Clark v. Honey-Jam Cafe, LLC*, 2013 WL 1789519, *1-2 (N.D. Ill. Mar. 21, 2013); *Haschak v. Fox & Hound Rest. Grp.*, 2012 WL 5509617, *5 (N.D. Ill. Nov. 14, 2012); *Driver v. AppleIllinois, LLC*, 2012 WL 689169 (N.D. Ill. Mar. 2, 2012) (decertification denied); *Schmidt v. Smith & Wollensky, LLC*, 268

11

F.R.D. 323 (N.D. Ill. 2010); *Driver*, 265 F.R.D. at 311; *Kernats*, 2010 WL 4193219; *Acosta v. Scott Labor, LLC*, 2006 WL 27118 (N.D. Ill. Jan. 3, 2006); *Yon v. Positive Connections, Inc.*, 2005 WL 628016 (N.D. Ill. Feb. 2, 2005).

Plaintiffs meet the requirements for class certification.

### 2. Certification Under Rule 23(a).

#### a. Numerosity~ Rule 23(a)(l)

A class must be large enough that joinder of all members would be impracticable. FED. R. CIV. P. 23(a)(1). Impracticability is not a synonym for impossibility; rather, joinder is impracticable if it would be difficult or inconvenient. *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 471 (N.D. Ill. 1992). A plaintiff need not establish the exact number of members of the proposed class. *Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009). Although there is no magic number for establishing numerosity, a class including more than 40 members is generally considered sufficient. *Id.*; *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 836 (N.D. Ill. 2008).

During discovery in this matter, Chiro One produced a list of class members with their dates of employment. This list shows the Illinois class consists of at least 374 members. [Jones Dec., ¶ 16]. In addition, Chiro One's Chief Operations Officer testified each of the 55 Illinois locations employs at least one CT, and most locations have 3 or more CTs on staff. [Wang Depo., pp. 17-18]. The numerosity requirement is met here.

12

### b.    Commonality–Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class. FED. R. CIV. P. 23(a)(2). The commonality requirement may be satisfied by showing one issue common to all class members. *Dukes*, 131 S. Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do") (internal punctuation omitted); *see also Walker v. Bankers Life & Cas. Co.*, 2007 WL 2903180, *4 (N.D. Ill. Oct. 1, 2007) ("Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members.").

Commonality thus requires a common issue capable of class-wide resolution, "which means a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. A common question may be shown where claims of individual members are based on the common application of a statute, or where class members are aggrieved by the same or similar conduct. *Keele*, 149 F.3d at 592.

There are at least two common issues in this case, as all of the proposed class members were subjected to the same unlawful employment practices of Defendant: (1) treating CTs as exempt from the overtime requirements of the IMWL, and (2) failing to maintain records of the hours worked by CTs (until late 2011). [Ex. 5, Wang Depo., pp. 67-68; Ex. 22, Jones Dec., ¶ 15, Exs.11, 12, 15, 16, 24, 25, 29; Ex. 7, Diaz Dec., ¶¶ 7, 11, 13; Ex. 6, Kurgan Dec., ¶¶ 7, 11, 13; Ex. 8, Effort Dec., ¶¶ 7, 17, 18; Ex. 9, Walenga Dec. ¶¶ 8, 9, 11; Ex. 10, Waite Dec., 12, 13, 15; Ex. 26, O'Neill Dec. ¶¶ 5, 10-15]. Thus, Chiro One treated all CTs – the entire IMWL proposed class – in precisely the same manner resulting in an identical violation of the maximum hour provisions of the IMWL. These common employment practices create common issues of law and fact. *Barragan*, 259 F.R.D. at 334; *Keele*, 149 F.3d at 594 ("A common nucleus of operative facts" arising

from a defendant's "standardized conduct towards members of the proposed class" is sufficient to show commonality). And "a determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

The legality of Chiro One's decision to treat all CTs as exempt is particularly amenable to class resolution here because Chiro One, by failing to assert the affirmative defense of exemption, waived its right to contest that any CTs were exempt from the overtime pay provisions of the IMWL. This alone establishes commonality. *Butler v. Sears, Roebuck & Co.*, --F.3d.--, 2013 WL 4478200, *4 (7th Cir. Aug. 22, 2013) (commonality shown where an "issue 'central to the validity of each one of the claims' in a class action ... can be resolved 'in one stroke'") (quoting *Dukes*, 131 S. Ct. at 2551). But other facts confirm this issue would be capable of common resolution: (1) Defendants' classification of CTs as exempt was made at the corporate level (as was the decision to reclassify the position as non-exempt); (2) Chiro One's locations have a standardized hierarchy; (3) Chiro One had standardized corporate policies and procedures governing these employees; (4) Chiro One had uniform training programs for these employees; (5) the job duties of CTs are uniform throughout Chiro One; and (6) Chiro One strived to "standardize" the delivery of its services throughout its locations. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) Where there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt.). Commonality is established.

### c. Typicality~ Rule 23(a)(3)

Claims of the class representatives and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *Keele*, 149 F.3d at 595; *Cicilline*, 542 F. Supp. 2d at 836. Typicality and commonality are closely akin. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

Typicality is meant to insure that the claims of the class representatives have the "same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n*, 7 F.3d at 596. In cases involving violations of wage and hour laws, typicality is generally satisfied because the named plaintiffs and class members have been injured by the same course of unlawful conduct. *Barragan*, 259 F.R.D. at 334. Because Chiro One has not raised (and, in fact, has waived) the affirmative defense of exemption, there can be no dispute in this case that all class members were uniformly misclassified as exempt. Thus, the claims of the class representatives are typical of those of the class.

### d. Adequacy of Representation~ Rule 23(a)(4)

The adequacy requirement is meant to assure that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Courts determine adequacy in two parts: (1) the plaintiff's ability to ensure vigorous advocacy on behalf of the class without interests antagonistic to the class; and (2) the adequacy of the named plaintiff's counsel to fairly and adequately represent the interests of the class. *Haschak*, 2012 WL 5509617 at *3.

### i. There is No Conflict of interest Between Named Plaintiffs and the Class

The proposed Class Representatives worked as CTs and their overtime claims are based on the same unlawful classification decision as the rest of the proposed class. Plaintiffs have shown their commitment to vigorous litigation by answering written discovery and giving depositions. [Ex. 22, Jones Dec., ¶ 17]. This qualifies them as "conscientious representative plaintiffs" and satisfies the adequacy of representation requirement. *Robles v. Corporate Receivables, Inc.*, 220 F.R.D. 306, 314 (N.D. Ill. 2004); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, *5-6 (N.D. Ill. Dec. 1, 2000).

Plaintiffs do not have any interests antagonistic to the class. Rather, Plaintiffs have the same interests and have suffered the same damages as the proposed class members. *Ladegaard*, 2000 WL 1774091, *5-6 (no antagonistic interest where plaintiff alleged same violation and remedy for the rest of the class); *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998); *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 443 (S.D.N.Y. 1995) (finding no antagonistic interest where named plaintiffs allege same interests and injuries as the class and where claims of all class members focus on a company-wide policy).

### ii. Class Counsel is Experienced and Qualified

Plaintiffs and Plaintiffs' counsel will also fairly and adequately protect the interests of the class. Plaintiffs' counsel are highly experienced attorneys and have acted as representative counsel in numerous actions in federal and state courts. [Ex. 22, Jones Dec., ¶¶ 4 – 11; Ex. 23, Werman Dec., ¶¶ 4-15; Ex. 27, Zouras Dec., ¶¶ 4-11].

### 3. Plaintiffs' IMWL Claim Satisfies the Requirements of Rule 23(b)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs' IMWL claim meets these standards.

### a. Predominance of Common Questions

The predominance inquiry tests whether a proposed class is "sufficiently cohesive." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Cohesion justifies adjudication of numerous claims through the representative class mechanism. *Id.*; *Butler*, 2013 WL 4478200 at *4. It is also "a question of efficiency." *Butler*, 2013 WL 4478200 at *3.

The Seventh Circuit recently emphasized that the "predominance requirement is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815 *quoting* 7AA Wright & Miller, Federal Practice and Procedure § 1778 (3d ed. 2011). If a significant aspect of the case "is capable of proof at trial through evidence that is common to the class rather than individual to its members" (*Id.* at 818), predominance is met. *Butler*, 2013 WL 4478200 at *5 (re-affirming certification). This does not mean individual questions must be absent. "The text of Rule 23(b)(3) itself contemplates that such individual questions will be present.  The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner*, 669 F.3d at 815. Predominance is not "determined by simply by counting noses," an

17

"issue 'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Butler*, 2013 WL 4478200 at *4 (citing *Dukes,* 131 S. Ct. at 2551); *Barragan*, 259 F.R.D. at 334.

Here, the issues related to class-wide *liability* predominate over any individualized issues. As explained above, Chiro One admitted, by failing to plead an affirmative defense of exemption, that none of proposed class members were exempt from the IMWL. [ECF No. 94]. The question of Plaintiffs' and the proposed class's right to overtime pay can therefore be determined for the entire class in a single adjudication, without considering a single individualized issue. Moreover, Chiro One admits it did not keep records regarding the hours worked for any of its CTs until late 2011. [Ex. 5, Wang Depo., pp. 67 – 68]. Thus, no individualized issues exist with respect to these issues. *See Barragan*, 259 F.R.D. at 334 ("The IMWL claim alleged here arises from a uniform type of alleged violation by Defendants, namely, a common practice of failing to pay overtime pay. There can be no question that this alleged common practice will be the principal issue of the litigation.").

Neither the Supreme Court's recent decision in *Comcast Corp. v. Behrend,* 133 S.Ct. 1426 (2013), nor the Seventh Circuit's decision in *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013), alter the landscape for FLSA conditional or IMWL class certification in this case.

      **i.**    **The *Comcast* Decision Does Not Militate Against Class Certification of Plaintiffs' IMWL Claims**

*Comcast* was an antitrust action. The district court, in a decision affirmed by Third Circuit, certified "a class of more than 2 million current and former Comcast subscribers who seek damages for alleged violations of the federal antitrust laws." *Comcast*, 133 S. Ct. at 1429-30. The plaintiffs alleged Comcast's practice of "clustering" (or concentrating their operations in a certain region) harmed subscribers "by eliminating competition and holding prices for cable services above

18

competitive levels." *Id.*, at 1430. In the district court, the plaintiffs sought to certify a class

pursuant to Fed. R. Civ. P. 23(b)(3). *Id.*

In the district court, the plaintiffs pursued four different theories of antitrust impact, *i.e.*,

theories as to how Comcast's clustering may have caused individual injuries to the plaintiffs.

*Comcast*, 133 S. Ct. at 1430. But the district court found only one theory (the "overbuilder theory

of antitrust impact") was capable of class-wide proof. *Id.* at 1431. The plaintiffs presented a

regression model that compared actual cable prices with the "'hypothetical prices that would have

prevailed but for petitioners' allegedly anticompetitive behavior." *Id.* Significantly, the model did

not isolate damages resulting from any particular theory of antitrust impact. *Id.*

On appeal to the Third Circuit, Comcast argued certification should be reversed because

the expert's damage report was not limited to the one viable theory. *Id.* The Third Circuit rejected

this argument and found that this was an attack on the merits which was not proper at the

certification stage. *Id.* The Third Circuit also stated that "[a]t the class certification stage,"

respondents were not required to "tie each theory of antitrust impact to an exact calculation of

damages."*Id.* (citation omitted). Citing *Dukes*, the Supreme Court found that inquiry into the

merits is necessary when determining whether Rule 23 elements have been met. *Id.* at 1432-1433.

*Comcast* overruled the Third Circuit because it failed *Dukes* by not inquiring into the merits of the

antitrust element addressing class impact/damages (*i.e.*, it refused to explore the merits of the

plaintiffs' flawed expert report on this element). *Id.* at 1432. Had the Third Circuit done so,

plaintiffs would have failed the requirement that the theory of liability must match the theory of

damages. *Id.* at 1434.

19

*Comcast* simply restates well-established class certification principles. *Butler*, 2013 WL 4478200 at *3 (explaining *Comcast* in the context of the authorities it cites). It does not articulate any new generally applicable rule of predominance. *See Comcast*, 133 S. Ct. at 1433 ("This case thus turns on the straightforward application of class-certification principles . . . ."); *see also id.* at 1436 (Ginsburg and Breyer, JJ., dissenting) ("[T]he opinion breaks no new ground on the standard for certifying a class action[.]"). *Comcast*, 133 S. Ct. at 1432-33.

And post-*Comast*, the Seventh Circuit confirmed the well-settled principle that proof of classwide damages is not a prerequisite to certification. *Butler*, 2013 WL 4478200 at *4. Judge Posner explained that individualized damages create a danger of predominance only when class members are "seeking damages beyond those flowing from the theory of antitrust injury alleged by the plaintiffs," because then "the possibility loom[s] that 'questions affecting only individual members' of the class would predominate over questions 'common to class members[.]'" *Id.* (quoting *Comcast*, 133 S.Ct. at 1432-33). In fact, the Seventh Circuit noted that *Comcast* was factually distinguishable from many cases because "[n]one of the parties had even challenged the district court's ruling that class certification required 'that the damages resulting from ... [the antitrust violation] were measurable 'on a class-wide basis' through use of a 'common methodology.'" *Id.* at *3 (quoting *Comcast*, 133 S. Ct. at 1430). Thus, "[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) [remains] well nigh universal." *Comcast*, 133 S. Ct. at 1437 (Ginsburg and Breyer, JJ., dissenting) (citations omitted);[16] *Butler*, 2013 WL 4478200 at *4-5; *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008).

---

[16]     Because Comcast does not repudiate this precedent, the "decision should not be read to require, as a prerequisite to certification, that damages attributable to a classwide injury be measurable 'on a classwide basis.'" *Id.* at 1436 (Ginsburg and Breyer, JJ., dissenting). As the Seventh Circuit noted in discussing

A class can therefore satisfy predominance based on common questions regarding liability notwithstanding the need for individualized damage calculations. *See Arreola*, 546 F.3d at 801 ("need for individual damages determinations does not, in and of itself, require denial of his motion for certification."). Indeed, "[i]f the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." *Butler*, 2013 WL 4478200 at *5 (emphasis added); *Healy v. Int'l Bhd. of Elec. Workers, Local Union No. 134*, ~F.Supp.2d.~, 2013 WL 4494685, *10 (N.D. Ill. Aug. 22, 2013) ("*Comcast* does not come close to saying, as defendants suggest, that a class cannot be certified whenever there are variations among class members' damages.").

Interpreting *Comcast* otherwise would run afoul of a Supreme Court opinion issued just a few weeks earlier. In *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S. Ct. 1184 (2013), a six-justice majority held that "Rule 23(b)(3) ... does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'" *Amgen Inc.*, 133 S. Ct. at 1196 (emphasis in original). Given *Butler*, it is clear the Supreme Court did not change its view of so fundamental an issue so dramatically in the few weeks between *Amgen* and *Comcast*. *Butler*, 2013 WL 4478200 at *4-5.

Indeed, both the Seventh Circuit and courts in this District (as well as the majority of courts elsewhere) refuse to read *Comcast* broadly or to extend its holding beyond the antitrust context. *See Butler*, 2013 WL 4478200 at *4-5 (individualized damages do not preclude class

---

Comcast, it "is wrong to think that anything a dissenting opinion approves of the majority *must* disapprove of." *Butler*, 2013 WL 4478200 at *3 (emphasis in original).

certification). The Seventh Circuit also refused to review an order granting class certification of an IMWL claim (see, *Clark v. Honey-Jam Cafe, LLC.*, 2013 WL 1789519 (N.D. Ill. Mar. 21, 2013)) that rejected the employer's argument that individualized questions concerning damages predominated and, therefore, precluded certification. *See Clark v. Honey-Jam Cafe, LLC*, 13-8006, ECF No. 3 (7th Cir.). In *Harris v. comScore, Inc.*, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (Holderman, J.), the court certified a class under various computer privacy statutes over the defendants' objection that individual damages defeated predominance. *Id.* at *10. Even after *Comcast*, the court held that "individual factual damages issues do not provide a reason to deny class certification when the harm to each plaintiff is too small to justify resolving the suits individually . . . ." *Id.* (citing *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012)). It remains true that "it is far more efficient to resolve all of the common issues in a single proceeding, and then to hold individual hearings on damages if necessary, than it would be to litigate all of the common issues repeatedly in individual trials." *Id.* The court in *Harris* explicitly declined to apply *Comcast* to the non-antitrust case before it, and declined to interpret *Comcast* as announcing any new generally-applicable class action rule. *Id.* at *10, n.9. Other courts agree.[17]

---

[17]     On May 28, 2013, the Ninth Circuit recognized that Comcast does not mean individualized damage calculations alone will defeat class certification. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013). In Leyva, a wage and hour case, the district court denied certification to Id. class of employees alleging various wage claims, including "off the clock" violations. *Id.* at 511. The district court found that, while common issues predominated related to the employer's liability under California state law, the damages inquiry would be "highly individualized." *Id.* at 512-513. In reversing the district court with instructions to grant class certification, the Ninth Circuit held that the court abused its discretion and "used the wrong standard" when it denied certification on the basis that damages calculation would be individual. *Id.* at 513. The Court confirmed that "damage calculations alone cannot defeat certification." Id. Because the "only individualized factor that the district court identified was the amount of pay owed," the district court had abused its discretion in denying class certification. Id. The decision in Bulter confirms the same black-letter maxim holds in this circuit. *Butler*, 2013 WL 4478200 at *4-5; *see also, Messner*, 669 F.3d at 815 (cited in *Butler*); *Arreola*, 546 F.3d at 801; *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (cited in *Butler*).

Certainly a plaintiff's theory of damages must flow from the theory of liability, *i.e.*, the plaintiff must seek damages that are "the result of the wrong." *Comcast*, 133 S.Ct. at 1434. This requirement is easily satisfied here. Plaintiffs' theory of liability is that Defendant unlawfully refused to pay CTs overtime pay as required under the IMWL. "[T]here is no possibility in this case that damages could be attributed to acts of the defendants that are not challenged on a class-wide basis; all members of the ... class attribute their damages to [Chiro One's decision to classify them as exempt]." *Butler*, 2013 WL 4478200 at *3. Plaintiffs' theory of liability could not be any more tethered to the theory of damages. *Id.*

### ii. The *Espenscheid* Decision Does Not Militate Against Class Certification Of Plaintiffs' IMWL Claims

The *Espenscheid* decision affirmed the ruling of the district court to *decertify* a multistate class action, containing a dozen subclasses, just days before trial. *Espenscheid v. DirectSat USA, LLC*, 2011 WL 2009967, *7 (W.D. Wis. May 23, 2011) *amended*, 2011 WL 2132975 (W.D. Wis. May 27, 2011).

There are numerous differences between this case and *Espenscheid*, but the central point is that despite all those potential problems, issues not present here, the district court *did* authorize a nation-wide collective action, and certified Rule 23 classes under several state laws (Wisconsin, Minnesota and Pennsylvania), divided into 12 subclasses. *Id.* at *2. That decision survived a "stage two" motion for decertification of the FLSA claim, and a Rule 23(f) petition to the Seventh Circuit. *Id.*

But as the case proceeded to trial, it was class counsel's insistence, by motion and again in two successive trial plans, that the 12 subclasses be eliminated and the trial proceed as one class, which led to eventual decertification. *Id.* at *5-7.

23

In their response, plaintiffs criticize the subclasses as being unworkable and improper and insist that they should be able to proceed with one class. In the alternative, plaintiffs propose that they be allowed to proceed with the subclasses, based on the assumption that all plaintiffs and class members have claims in every subclass.

Neither of plaintiffs' proposals is acceptable. *Both are merely attempts to work around the subclasses that I created as an alternative to decertifying the case. Thus, although the subclasses may have problems, the solution is not to ignore them.* As I noted in the order creating the subclasses, the opt-in plaintiffs and class members have *divergent testimony, distinct theories of liability and unique employment environments and experiences.* Dkt. #387 at 39 (concluding that "defendants' concerns are manageable through bifurcation and the creation of subclasses"); see also dkt. #549 at 3 (concluding that case could proceed as class action "if plaintiffs' claims were divided into three subclasses for the purposes of summary judgment and trial"); dkt. #595 at 13 (reminding parties that this case cannot be tried with "one class" because the "experiences and claims of the class members vary too widely"). As the case has developed, *I have become more convinced that it cannot proceed as one class.*

*Id.* at *5 (emphasis added).

This was the backdrop to Seventh Circuit's affirmance of the district court's decertification order. The Seventh Circuit decision rejects *unrepresentative* testimony in class actions: nothing more. *Espenscheid*, 705 F.3d at 775. Indeed, the Court affirmed the use of representative evidence to establish work time that the employer's records unlawfully failed to capture.

The "representative" proof they have submitted does not do this. The unreported time for each employee *could be* reconstructed from memory, *inferred from* the particulars of the jobs the technicians did, *or estimated in other ways—any method* that enables the trier of fact to draw a "just and reasonable inference" concerning the amount of time the employee had worked would suffice.

*Id.* (emphasis added).

Thus, *Espenscheid* simply has no bearing on a district court's initial decision to grant conditional or class certification.

24

### iii. Neither *Comcast* Nor *Espenscheid* Overrule Or Call Into Question The Supreme Court's Decision in *Anderson v. Mt. Clemens, Sub-Silentio*

Neither *Comcast* nor *Espenscheid* altered the protections provided under IMWL or FLSA, or the decades of substantive law establishing evidentiary presumptions of proof in such cases. Like most wage and hour laws, the IMWL requires <u>employers</u> to maintain records of hours worked that would prove employee damages in an overtime case. *See* 820 ILCS § 105/8.[18] If the employer is shown to have failed to keep the required records, other methods to determine damages can be used. Where an employer fails to keep accurate records, the employee has carried his burden if (a) "he proves that he in fact performed work for which he was improperly compensated," and (b) "if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("*Mt. Clemens*"). The employer cannot claim this measure of damages lacks precision that would exist had the employer followed the law and recorded the time worked. *Id.* at 688; *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008)("where an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure").

This framework has long been used by courts in class actions under the IMWL. *See, e.g., Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1037 (N.D. Ill. 2012) (in granting class summary judgment under IMWL, "Plaintiffs may establish damages using the *Mt. Clemens* burden-shifting

---

[18]        *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 WL 1882449, *4 (N.D. Ill. Aug. 18, 2004) ("Under both the FLSA and IMWL, employers, not employees, have a duty to keep accurate records of all hours worked by their employees.")

framework..."); *Driver*, 2012 WL 689169 at *3 (In IMWL class claim, "the employees can use the relaxed *Mt. Clemens* standard to prove their damages.").

The Seventh Circuit has made it clear *Comcast* and *Espenscheid* decisions did not rewrite this precedent in favor of some unspecified form of "classwide" proof of damages. *Butler*, 2013 WL 4478200 at *4 (noting, post-*Comcast* and *Espencheid*, that "common proof of damages for class members ... is <u>not</u> required."). Indeed, the *Mt. Clemens* line of cases provides a classwide method of proof: to the extent that an employer's records are inaccurate or incomplete – like here – workers may use representative testimony to demonstrate the extent of their work by "just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. It is no obstacle that this method of classwide proof may result in damages that are approximate, *Id.* at 687-688, or that may be "somewhat generous," because these results stem from the employer's failure to comply with statutory requirements. *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 70 n.3 (2d Cir. 1997); *Espenscheid*, 705 F.3d at 775 (damages may be proven by "*any* method that enables the trier of fact to draw a 'just and reasonable inference' concerning the amount of time the employee had worked").

To read *Comcast* and *Espenscheid* as requiring class-wide proof of damages in the wage and hour case context would reject 60 years of precedent, including the Supreme Court's *Mt. Clemens* opinion. And, if that were to be the result, employees who have not been paid overtime wages, but whose employer properly maintained time and payroll records, could obtain class certification; their damages are a matter of a simple spreadsheet computation. But where the employer *fails* to comply with its legal requirement to maintain proper time and payroll records, even if the employees can establish liability on a class-wide basis, those employees cannot meet predominance prong because their damages must be individually determined. That is an outcome that finds no

26

support in *Comcast, Espenscheid,* and indeed, the Supreme Court's decision in *Amgen* is directly contrary. *Amgen Inc.*, 133 S. Ct. at 1196; *see also, Butler*, 2013 WL 4478200 at *5 (denying class status based on individualized damages would gut the utility of the class action device).

### b. Superiority of Class Action Method

A class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the classes. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992). The alternative is potentially dozens of individual lawsuits, piecemeal litigation and inconsistent adjudications. Without a class, the Court would have to hear dozens of additional individual cases raising identical questions of liability. "Requiring the class members to bring separate law suits would waste judicial resources, limit judicial access to the courts, and create a problem of inconsistent judgments." *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 754 F. Supp. 1070, 1079 (W.D. Pa. 1991).

Because liability turns on Chiro One (admitted) acts, the question of Chiro One's liability will be determined by proof that is identical as to each class member. A class determination of liability is therefore compelling from a manageability perspective. More than 350 CTs employed by Chiro One were harmed by a common policy and practice that violated the IMWL. Under these circumstances, case-by-case resolution of Plaintiffs' IMWL claims "would be an inefficient use of both judicial and party resources." *Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450, 456 (N.D. Ill. 2011); *see Espenscheid*, 705 F.3d at 776("Although each class member claims to have lost several thousand dollars as a result of DirectSat's alleged [wage and hour] violations, that isn't enough to finance a modern federal lawsuit; and in such a case, where it is class treatment or

27

nothing, the district court must carefully explore the possible ways of overcoming problems in calculating individual damages.").

Moreover, requiring individual lawsuits would also raise the possibility that "because of the small individual recovery, many potential plaintiffs may not even bring their claims." *Id.* As stated by the Seventh Circuit: "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). "Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits." *Butler*, 2013 WL 4478200 at *5.

In light of the limited size of potential financial recovery from individual suits, it is desirable to concentrate these claims in a single forum. *See, e.g., Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) (for small-stakes cases, class suit is best, perhaps only, way to proceed). As such, Plaintiffs' claims are well-suited for class treatment. *Id.*

### 4. Alternatively, Certification of Liability Issues is Appropriate under Rule 23(c)(4)

As explained above, nothing requires Plaintiff to prove class wide damages in one fell swoop to obtain class certification. *Butler*, 2013 WL 4478200 at *4 (noting, post-*Comcast* and *Espencheid*, that "common proof of damages for class members ... is <u>not</u> required.") (emphasis added); *Healy*, 2013 WL 4494685 at *9 (*Espencheid* does not preclude certification even where individual damages vary). Nevertheless, if the Court finds that individualized damage issues are a barrier to conditional or class certification, Plaintiff requests permission to move to bifurcate

liability from damages and that the Court conditionally certify the FLSA class, and certify an IMWL liability-only class, under Rule 23(c)(4). As the Seventh Circuit noted, "a class action limited to determining liability on a class-wide basis, with separate hearings to determine [damages] ... will often be the sensible way to proceed." *Butler*, 2013 WL 4478200 at *4.

Under Plaintiffs' proposed alternative liability only class, damage issues are not present; the court's determination regarding the issues for which certification is sought – most likely to made at the summary judgment stage – would not include evidence related to aggregate class damages or damages formulas designed to compensate individual class members.[19] Accordingly, for purposes of the liability-only class Plaintiffs seek to certify in the alternative, damages issues do not enter into the question of predominance and the court's focus must be limited to the liability questions for which Plaintiffs *do* seek certification. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252, 256 (S.D.N.Y. 2010) ("For particular issues to be certified pursuant to Rule 23(c)(4), the requirements of Rule 23(a) and (b) must be satisfied only with respect to those issues. Regardless of whether an action as a whole satisfies Rule 23(b)(3)'s predominance requirement, courts may employ Rule 23(c)(4) to certify a class on a particular issue.).[20]

---

[19] By limiting their request for certification in this regard, Plaintiffs are not waiving their right to subsequently seek certification of the damages issue in order to prove up and obtain an aggregate class damage award.

[20] See also, 6 NEWBERG ON CLASS ACTIONS § 18:7 ("Even cases which might not satisfy the predominance test when the case is viewed as a whole may sometimes be certified as a class limited to selected issues that are common, under the authority of Rule 23(c)(4)."); 7B Wright & Miller FEDERAL PRACTICE AND PROCEDURE § 1790 ("Subdivision (c)(4) is particularly helpful in enabling courts to restructure complex cases to meet the other requirements for maintaining a class action.... The theory of Rule 23(c)(4)(A) is that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member.")).

Rule 23(c)(4) specifically provides for the certification of "issues" classes, including liability-only classes. *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."); *Butler*, 2013 WL 4478200 at *4. The purpose of this rule is to promote judicial economy by litigating common issues of the class. *Id.* at *4-5; *Fulghum v. Embarq Corp.*, 2011 WL 13615 (D. Kan. Jan. 4, 2011). The advisory committee's note accompanying Rule 23(c)(4) expressly contemplates separating liability from damages. *See* Fed. R. Civ. P. 23(c)(4) advisory committee's note (1966) (recognizing that an "action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims"). The MANUAL ON COMPLEX LITIGATION also notes a court's ability under Rule 23(c)(4) to certify specific issues or elements of claims in order to "achieve the economies of class action treatment for a portion of a case, the rest of which may either not qualify under Rule 23(b) or may be unmanageable as a class action. 9 MANUAL ON COMPLEX LITIGATION 4th § 21.24. Issue class certification is further recognized by Newberg on Class Actions (4th ed.) §§ 4:23, 7:33.

The Seventh Circuit has repeatedly recognized that a Rule 23(b)(3) class may be certified for the limited purpose of resolving liability issues on a class-wide basis under Rule 23(c)(4). *See Butler*, 2013 WL 4478200 at *4 (certification of a liability only class is permitted and often "sensible"); *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 895 (7th Cir. 2011) *cert. denied*, 132 S. Ct. 242 (2011); *Carnegie*, 376 F.3d at 661(Posner, J.). The Seventh Circuit encourages district courts to employ Rule 23(c)(4) to the fullest extent in considering class certification under Rule 23(b)(3). *See, e.g., In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005) (vacating class

certification, but observing that a classwide determination of whether an employer had a policy of constructively discharging its employees would be more efficient than redetermining that question repeatedly in individual hearings to determine why any particular employee quit); *Carnegie*, 376 F.3d at 661 ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues ... [including] (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class."). In short, a "district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments[.]" *Healy*, 2013 WL 4494685 at *10 (quoting *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010)).[21]

The relevant inquiry under Rule 23(c)(4) is whether resolution of the particular common issues would materially advance the disposition of the litigation as a whole. *See Butler*, 2013 WL 4478200 at *4-5; *Fulghum*, 2011 WL 13615 at *2. Both of the issues Plaintiffs seek to certify will clearly advance the disposition of the litigation as a whole. First, a determination that CTs were not exempt from the overtime requirements of the IMWL would establish that all CTs who worked more than 40 hours in any workweek during the relevant time period are entitled to

---

[21]    In addition to the Seventh Circuit, numerous other courts since *Comcast* have also utilized Rule 23(c)(4) to bifurcate issues of liability and damages as well. *See Butler*, 2013 WL 4478200 at *4-5; *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, --F.3d.--, 2013 WL 3746205, *2, *16-19 (6th Cir. July 18, 2013); *Jacob v. Duane Reade, Inc.*, 2013 WL 4028147 (S.D.N.Y. August 8, 2013); *Miri v. Dillon*, 20132 WL 2034310 (E.D. Mich. May 14, 2013); *Wallace v. Powell*, 2013 WL 2042369 (M.D. Pa. May 14, 2013); *In re Motor Fuel Temperature Sales Practices Litigation*, 2013 WL 1397125 (D. Kan. April 5, 2013).

payment of overtime as a matter of law.[22] Thus, in any subsequent damages phase, the CTs' entitlement to overtime for hours worked in excess of 40 would already be established.

Similarly, a determination of the issue of whether Chiro One maintained adequate records regarding the hours worked by CTs would materially advance the disposition of this case. A finding that Chiro One failed to maintain adequate records regarding the hours worked by CTs would establish that Plaintiffs may, in any subsequent damages phase, prove the number of hours worked based on a "just and reasonable inference" under *Mt. Clemens Pottery Co.*, 328 U.S. at 687. Having this issue determined on a classwide basis, as it should be given Chiro One admission that it did not maintain records of hours worked for any CTs [Ex. 5, Wang Depo., pp. 67 – 68], will allow all CTs (and this Court) going into any subsequent damages phase (whether as a class or individually) to know that they may prove the amount of hours worked on the basis of a "just and reasonable inference." Accordingly, and at the very least, certification of issues-only classes under Rule 23(c)(4) is appropriate in this case. *Healy,* 2013 WL 4494685 at *10 (certifying a liability and damages class, but noting it would certify a liability only class even if individual damages issues had predominated).

## 5.  CONCLUSION.

WHEREFORE, for the reasons set forth in the foregoing memorandum of law and supporting materials, Plaintiffs request that the Court grant this motion and enter an order:

A.      Authorizing notice under 29 U.S.C.A. § 216(b) to similarly-situated current and former employees in this collective action;

---

[22]      However unlikely, given that Chiro One failure to raise an exemption defense, a negative finding on this issue would, of course, establish CTs are not entitled to overtime and would end all litigation.

  B.  Approving the notice under the provisions of 29 U.S.C. §216 contained in Exhibit 30;

  C.  Certifying Plaintiffs' IMWL claims as a class action pursuant to Rule 23(b)(3) and/or Rule 23(c)(4), authorize notice to the putative class, and appointing Plaintiffs' counsel as class counsel; and,

  D.  Granting such other relief as the Court deems appropriate under the circumstances.

Dated: August 22, 2013

              Respectfully submitted,


              **/s/ James A. Jones**
              _____
              One of the Attorneys for Plaintiffs

Richard J. (Rex) Burch
James A. Jones
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065

Douglas M. Werman
**Werman Law Offices, PC**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

James B. Zouras
**Stephan Zouras, LLP**
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
212-233-1550
312-233-1560 f