**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MONICA KURGAN and MADELINE DIAZ, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  10-cv-1899 |
| CHIRO ONE WELLNESS CENTERS LLC, | ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' amended motion for collective and class certification [144].  Plaintiffs ask the Court to (1) authorize notice under 29 U.S.C. §216(b) to similarly situated current and former employees of this collective action; (2) certify Plaintiffs' IMWL overtime wage claim under Federal Rule of Civil Procedure 23(b)(3) and/or Rule 23(c)(4); (3) appoint Plaintiffs' counsel as class counsel; and (4) approve the proposed notice forms.  For the reasons stated below, the Court grants Plaintiffs' amended motion for collective and class certification [144].  This case is set for further status on 3/11/2014 at 2:00 p.m.

**I.      Background**

Plaintiffs Monica Kurgan and Madeline Diaz allege that Defendant Chiro One Wellness Centers, LLC ("Chiro One") willfully failed to pay them and other hourly workers the overtime wages to which they were entitled under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and the Illinois Minimum Wage Law, 820 ILCS § 105/1 et seq.  They seek to proceed on their own behalf and on behalf of all others similarly situated, both as class representatives and lead

plaintiffs in a collective action.  See *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 981 (7th Cir. 2011).

Chiro One is a limited liability corporation headquartered in Oak Brook, Illinois, that operates 75 "wellness centers" providing chiropractic services in Illinois, Kentucky, and Texas. Chiro One has 57 locations in Illinois, 12 locations in Kentucky, and 6 locations in Texas.  Chiro One owns each location; they are not franchises. Each location is staffed with at least one Chiropractor and, typically, three or more Chiropractic Technicians ("CTs").  In the past, staffing also included Chiropractic Assistants ("CAs").  The CA job duties were completely subsumed within those of the CT.  Eventually, Chiro One simply "incorporated" the CA position and job duties into the CT "role."  Plaintiffs have come forward with evidence that Chiro One employs standardized corporate policies and procedures governing CTs and that the job duties of CTs are uniform throughout Chiro One.  For instance, Chiro One uses "checklists," which detail all of the duties CTs are expected to perform each day, and CTs are provided with comprehensive "scripts" for dealing with customers.

Before being assigned to a Chiro One location, CTs receive four to eight weeks of centralized, uniform training at Chiro One's corporate headquarters in Oak Brook, Illinois. During training, CTs were paid on an hourly basis.  At the end of training, CTs were assigned to a Chiro One location and changed from non-exempt, hourly employees to salaried, exempt employees.  Thus, after training, CTs were not paid overtime for any hours worked in excess of 40 in any work week.  For most of the relevant period, Chiro One did not keep records of the hours worked by CTs.  This lawsuit was filed in March 2010, and approximately a year and a half later, Chiro One began tracking the hours worked by CTs.  However, Chiro One did not pay

CTs for overtime worked until December 2012, when Chiro One finally reclassified all of its CTs from exempt to non-exempt.

On March 25, 2010, Plaintiffs filed their Original Complaint against Chiro One, bringing claims under the IMWL. Prior to Chiro One filing an answer, Plaintiffs amended their complaint to add claims under the FLSA. On October 7, 2010, Chiro One filed its Answer and did not plead any affirmative defenses. On September 15, 2011, Plaintiffs filed a second amended complaint. Chiro One again answered and did not plead any affirmative defenses. On May 23, 2012, Chiro One stated on the record it would not raise any affirmative defense not already raised, and this Court entered an Order barring Chiro One from doing so.

Plaintiffs seek conditional certification of their FLSA claim and request that notice be sent to "All Chiropractic Assistants and Chiropractic Technicians employed by Chiro One during the period April 21, 2007 to December 17, 2012." Plaintiffs also seek to certify their IMWL overtime claims as a class action pursuant to Rule 23(b)(3) or, in the alternative, Rule 23(c)(4). Plaintiffs' proposed class is "All Chiropractic Assistants and Chiropractic Technicians employed by Chiro One in the State of Illinois during the period March 25, 2007 to December 17, 2012."

## II.      Conditional Certification of a Collective Action under the FLSA

Plaintiffs have moved for conditional approval or certification of a federal collective action under the FLSA, 29 U.S.C. § 216(b), which "authorizes employees to act together to seek redress for violations of the statute's minimum wage and maximum hour provisions." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). In the proposed notice, Plaintiffs identify the "class" as "[a]ll Chiropractic Assistants and Chiropractic Technicians employed by Chiro One during the period April 21, 2007 to December 17, 2012."

"'[C]ertification' is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (quoting *Hoffmann-La Roche*, 493 U.S. 165, 169, 174 (1989)); see also *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (same). "Section 216(b) does not by its terms require any such device, and nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice described in *Hoffmann-La Roche* has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action." *Myers*, 624 F.3d at 555 n.10. Nonetheless, "[t]he conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to participate in the collective action." *Ervin*, 632 F.3d at 974.

Courts generally take a two-step approach to conditional approval or certification of a federal collective action. See, *e.g.*, *Myers*, 624 F.3d at 554-55; *Hipp v. Nat'l Life Ins. Co.*, 252 F.2d 1208, 1218 (11th Cir. 2001). At the first step, the court makes an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiff with respect to whether a FLSA violation has occurred. *Myers*, 624 F.3d at 555. Plaintiff bears the burden of making a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)); see also *Bergman v. Kindred Healthcare, Inc.*, 949

F. Supp. 2d 852, 855 (N.D. Ill. 2013).[1] "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citations omitted). It requires "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Zavala*, 691 F.3d at n.4 (quotation omitted); see also *Molina v. First Line Sol'ns LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007) ("Unless defendant admits in its answer or briefs that other similarly situated employees exist, plaintiffs cannot rely on their allegations alone to make the required modest factual showing.").

If Plaintiffs are able to satisfy their initial burden, notice may be issued to prospective plaintiffs who may opt in to the action. Then, when discovery is closed, the case moves to the second step. On the more robust record, the Court determines whether the so-called "collective action" may go forward by assessing "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555; see also *Bergman*, 949 F. Supp. 2d at 855 (explaining that at the second step, "the defendant is given an opportunity to move for decertification"). "At the second stage, the court considers (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to individually applied to each plaintiff; and (3) fairness and procedural concerns." *Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 718 (N.D. Ill. 2012) (quotation omitted). This stage is where the certification becomes more akin to the familiar Rule 23 class certification standard,

---

[1] Some courts characterize the plaintiffs' burden as one of showing "a reasonable basis for his claim that there are other similarly situated employees." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008).

(see *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013)); "it is not until the conclusion of the opt-in process and class discovery 'that the court more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action.'" *Tamas v. Family Video Movie Club, Inc.*, 2013 WL 4080649, at *3 (N.D. Ill. Aug. 13, 2013) (quoting *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010)).

Defendant Chiro one does not contend that Plaintiffs have failed to meet the lenient standard ordinarily applied to conditional certification of an FLSA collective action. Instead, it asks the Court to deny notice under the "decertification" standard because "discovery * * * is already closed." However, the scheduling order in this case contemplated an initial period for "class discovery," after which a class certification motion would be filed, and a subsequent period of discovery following the court's ruling on certification. Thus, while class discovery is complete, additional discovery remains. See *Babych v. Psychiatric Solutions, Inc.*, 2011 WL 5507374, at *3 (N.D. Ill. Nov. 9, 2011) ("Courts refuse to skip the first step of the conditional certification inquiry where the parties' agreed schedule indicates that there will be two stages of discovery."). Further, "it is not until the conclusion of the opt-in process and class discovery 'that the court more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action.'" *Brown v. Club Assist Rd. Serv. U.S., Inc.*, 2013 WL 5304100, at *12 (N.D. Ill. Sept. 19, 2013). After all, the Court is "assessing whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* Until the opt-in process is complete, the Court cannot compare the named plaintiffs with those "who have opted in." *Id.*; *Sylvester v. Wintrust Fin. Corp.*, 2013 WL 5433593, at *3 (N.D. Ill. Sept. 30, 2013); *Babych*, 2011 WL 5507374 at *3

("unless the court is able to assess the individual claims of the employees who choose to opt-in to this FLSA collective action, it cannot make a final determination of whether the class members are 'similarly situated.'"); see also *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d at 855.

While the "lenient standard occasionally is heightened if plaintiffs have been allowed extensive discovery," an intermediate standard—not the decertification standard requested by Chiro One—applies. *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d at 855 (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823-26 (N.D. Ohio 2011)). The intermediate standard, while more stringent than the lenient first-step standard, is less rigorous than the second-step decertification standard. "Both sides' evidentiary submissions [are] considered in determining whether there is a group of similarly situated employees who may be discovered by sending out an opt-in notice." *Bergman*, 949 F. Supp. 2d at 856. But in "evaluating each side's submissions, it must be kept in mind that, despite the discovery that has been allowed, defendants still have greater access to evidence than plaintiffs and plaintiffs' modest showing need not be conclusive." *Id.* So even if a stricter standard is applied, Plaintiffs need only "make a modest 'plus' factual showing that there is a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices." *Id.* at *3.

Here, Plaintiffs have made the minimal "modest factual showing"—indeed, have made a "modest plus" showing—sufficient to carry them past the first stage of the conditional certification process, identifying for the Court and Defendant a group of potentially similarly-situated plaintiffs who may be discovered by sending opt-in notices. At this stage, Plaintiffs have demonstrated that Chiro One has always treated CTs as a cohesive group for the purposes of applying the FLSA. It uniformly classified them as exempt from the FLSA, which, Plaintiffs

allege, resulted in a systemic failure to maintain accurate records of the hours that CTs worked. And Chiro One later reclassified CTs to non-exempt employees and began paying them overtime. Plaintiffs also have showed that Chiro One employed CTs under a uniform job description, gave CTs uniform training, and structured (or "scripted") CTs' job duties to "standardize" the delivery of its services. See, *e.g., Betancourt v. Maxim Healthcare Servs., Inc.*, 2011 WL 1548964, *6 (N.D. Ill. Apr. 21, 2011) (uniform classification as exempt supported conditional certification); *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 849 (N.D. Ill. 2008) (same); *Vaughan v. Mortgage Source LLC*, 2010 WL 1528521, *4-5 (E.D.N.Y. Apr. 14, 2010) (uniform failure to record plaintiffs' time worked supported certification); *Pefanis v. Westway Diner, Inc.*, 2008 WL 4546526, *1 (S.D.N.Y. Oct. 8, 2008) (same); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 752 (N.D. Ill. 2010) ("A common policy or plan appears to exist because [all employees in the challenged position] were uniformly reclassified as non-exempt employees, making them eligible for overtime").

Chiro One argues that notice should be denied because the potential class members "did not have a common supervisor" and may have worked differing amounts of overtime. However, geographic commonality is not necessary to satisfy the FLSA collective action's "similarly situated" requirement. See *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 53-40 (S.D. Tex. 2008) (finding plaintiffs "similarly situated"—at the decertification stage—because they were subject to the same FLSA violation, even though they worked in different locations, under supervision of different individuals, for differing amounts of time); *Kuperman v. ICF Int'l*, 2008 WL 4809167 (E.D. La. Nov. 3, 2008) (geographic disparity among potential opt-ins does not preclude conditional certification: "the law is plain that that fact does not undermine the 'similarly situated' requirement"). Rather, the focus is on whether the employees were affected

by a common policy. See *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 405 (D.N.J. 1988) (affirmed by 493 U.S. 165 (1989)); see also *Kelly v. Bluegreen Corp.,* 256 F.R.D. 626, 631 (W.D. Wisc. 2009) ("Where an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations.").

To date, Plaintiffs have come forward with evidence that Chiro One classified all of its CTs as exempt; violated the record keeping requirements with respect to all CTs until December 2011; and, even after it began tracking hours worked, failed to pay overtime to CTs for hours worked in excess of 40 in a workweek. Under either the "modest" or "modest plus" standard, Plaintiffs have met the standard for FLSA certification and the issuance of notice. Accordingly, the Court concludes that Plaintiffs have met their burden of demonstrating that they and others were subject to a common policy or course of conduct by Defendant, and that issuance of a notice advising prospective opt-in plaintiffs of their rights is appropriate in this case.

## III.   Rule 23 Certification of IMWL Claims

To be certified as a class action, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternative requirements in Rule 23(b). *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). "As a threshold matter, a proposed class must always meet the Rule 23(a) requirements of numerosity, typicality, commonality, and adequacy of representation." *Id.* Then, when certification is sought under Rule 23(b)(3), as it is here, proponents of the class must show: (1) questions of law or fact common to the members of the proposed class predominate over

questions affecting only individual class members; and (2) a class action is superior to other available methods of resolving the controversy. *Messner*, 669 F.3d at 811.

Plaintiffs bear the burden of proving that they are entitled to class certification. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Although class certification proceedings are not "a dress rehearsal for the trial on the merits," *Messner*, 669 F.3d at 811, for purposes of deciding the certification question, the Court does not presume that all well-pleaded allegations are true. See *Szabo v. Bridgeport Machs.*, *Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001). Rather, before it allows a case to proceed as a class action, the Court "should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. "A party seeking class certification must affirmatively demonstrate his compliance with th[e] Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011). But the showing need not be "to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner*, 669 F.3d at 811. The Court exercises broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998).

## A.     Rule 23(a)

### 1.     Numerosity

The first requirement under Rule 23(a) is that the purported class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "While there is no threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Ringswald v. County of DuPage,* 196 F.R.D. 509, 512 (N.D. Ill. 2000) (citations omitted). Further, "a plaintiff does not

need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog & Cat Food Co., Inc.,* 259 F.R.D. 330, 333 (N.D. Ill. 2009). Courts rely on "common sense" to determine whether an estimate of class size is reasonable and estimates "may not be based on pure speculation." *Murray v. E\*Trade Fin. Corp.,* 240 F.R.D. 392, 396 (N.D. Ill. 2006).

During discovery, Defendant produced a list of class members with their dates of employment. The list shows that the Illinois class consists of at least 374 members. In addition, Defendant's Chief Operations Officer testified that each of the 55 Illinois locations employs at least one CT, and most locations have 3 or more CTs on staff. Defendant argues that numerosity is not met because Plaintiffs (1) "cannot establish one class member of chiropractic assistants," (2) cannot "provide an estimate for the number of chiropractic assistants damaged by [Chiro One's] conduct," and (3) cannot establish the number of Chiropractic Technicians who worked overtime.

With respect to Defendant's first argument, the list of class members produced by Defendant shows that the class of misclassified CTs *and CAs* consists of at least 374 members. Plaintiffs have asserted that, given the near complete overlap of job duties, CTs and CAs are properly included in a single class. At this stage, Defendant has failed to show any relevant distinctions between CTs and CAs, and thus Plaintiff's classification passes muster. Defendant's second and third arguments challenge the merits of Plaintiffs' claims. At this stage, the suggestion that Plaintiffs cannot show numerosity because some potential class members may not have worked overtime does not stand in the way of certification. Not every class member needs to have been damaged by the Defendant's policy in order to support a class. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) ("a class will often include persons who

have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification"); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012) ("All of this is at best an argument that some class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification."); *Wiedenbeck v. Cinergy Health, Inc.*, 2013 WL 5308206, at *8 (W.D. Wis. Sept. 20, 2013) (the possibility that some members of the class were not harmed by defendant's conduct is not a basis for rejecting class certification). Even if certain class members were not harmed by Defendant's policies, this is "an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate [Chiro One]." See *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013). The Court finds that Plaintiffs have met the numerosity requirement.

### 2. *Commonality*

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). The commonality requirement may be satisfied by showing one issue common to all class members. See *Dukes*, 131 S. Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do") (internal punctuation omitted); see also *Walker v. Bankers Life & Cas. Co.*, 2007 WL 2903180, *4 (N.D. Ill. Oct. 1, 2007) ("Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members."). Commonality thus requires a common issue capable of class-wide resolution, "which means a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. A

common question may be shown where claims of individual members are based on the common application of a statute, or where class members are aggrieved by the same or similar conduct. *Keele*, 149 F.3d at 592.

Plaintiffs contend that there are at least two common issues in this case: (1) treating CTs as exempt from the overtime requirements of the IMWL, and (2) failing to maintain records of the hours worked by CTs (until late 2011). Plaintiffs contend that Defendant treated all CTs—the entire IMWL proposed class—in the same manner resulting in an identical violation of the maximum hour provisions of the IMWL. According to Plaintiffs, these common employment practices create common issues of law and fact. *Barragan*, 259 F.R.D. at 334; *Keele*, 149 F.3d at 594 ("A common nucleus of operative facts" arising from a defendant's "standardized conduct towards members of the proposed class" is sufficient to show commonality). Plaintiffs further contend that the legality of Defendant's decision to treat all CTs as exempt is particularly amenable to class resolution because Chiro One, by failing to assert the affirmative defense of exemption, waived its right to contest that any CTs were exempt from the overtime pay provisions of the IMWL.

In arguing against a finding of commonality, Defendant relies on *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). However, the lack of commonality found in *Dukes* sprang from the fact that the plaintiffs' Title VII claims turned on reasons that motivated particular employment decisions. This would require analyzing millions of subjective employment decisions and would not result in a common answer as to why each employee was a victim of alleged discrimination. "Unlike a Title VII claim, * * * plaintiffs' IMWL claim requires no proof of individual discriminatory intent." *Driver v. AppleIllinois*, LLC, 2012 WL 689169, at *2 (N.D.

Ill. Mar. 2, 2012). "The answer to 'why,' which is critical to a Title VII case, is irrelevant here." *Id.*

Additionally, as recognized by Defendant, commonality is established if "the claims of the class members depend on a 'common contention' that is 'of such a nature that is capable of classwide resolution—which means that the termination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Def.'s Resp. at p. 9 (quoting *Dukes*, 131 S. Ct. at 2551)]. Here, Defendant's alleged failure to pay overtime and track hours of work resulted from a uniform, official, corporate policy of treating CTs as exempt. This decision was made at the corporate level, not by individual supervisors at each location. The legality of this uniform policy is the focus of this litigation. *Dukes*, 131 S. Ct. at 2551. Indeed, post-*Dukes*, the Seventh Circuit noted that "a single, firm-wide policy * * * could satisfy 23(a)(2)." See *Vang v. Kohler Co.*, 488 F. App'x 146, 147 (7th Cir. 2012); see also *Bolden v. Walsh Const. Co.*, 688 F.3d 893, 897 (7th Cir. 2012) ("Relying on *Falcon*, the Court in *Wal–Mart* explained that a multi-store (or multi-site) class could satisfy Rule 23(a)(2) if the employer used a procedure or policy that spanned all sites."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 490 (7th Cir. 2012) (challenging company-wide policies in a class action is not forbidden by the *Dukes* decision).

Although Plaintiffs' claims may raise individualized questions regarding the number of hours worked and how much each employee was entitled to be paid, those differences go to the damages each employee is owed, not to the common question of Chiro One's liability. "Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1437 (2013) (Ginsberg and Breyer, JJ., dissenting); see also *Butler*, 727 F.3d at 801 (confirming, post-

*Comcast*, that individual damages do not preclude class certification); *Messner*, 669 F.3d at 815 ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."); *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008)("need for individual damages determinations does not, in and of itself, require denial of his motion for certification."). Plaintiffs have alleged a common injury based on particular employment policies that are capable of classwide resolution without inquiry into multiple employment decisions.

In sum, the Court finds that the allegations of standardized conduct put forth by Plaintiffs arise from a "common nucleus of operative fact." See *Butler,* 727 F.3d at 801 (commonality shown where an "issue 'central to the validity of each one of the claims' in a class action * * * can be resolved 'in one stroke'") (quoting *Dukes*, 131 S. Ct. at 2551). Defendants' classification of CTs as exempt was made at the corporate level (as was the decision to reclassify the position as non-exempt). Additionally, Plaintiffs have come forward with evidence that Chiro One's locations have a standardized hierarchy and that Chiro One had standardized corporate policies and procedures governing these employees and uniform training programs for these employees. See, *e.g.*, *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008). Where there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt. Here, commonality is established.

### 3. Typicality

Claims of the class representatives and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *Keele*, 149 F.3d at 595; *Cicilline*, 542 F. Supp. 2d at 836. Typicality and commonality are closely related. *Rosario*

*v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

Typicality is meant to insure that the claims of the class representatives have the "same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n*, 7 F.3d at 596. In cases involving violations of wage and hour laws, typicality is generally satisfied because the named plaintiffs and class members have been injured by the same course of unlawful conduct. See *Barragan*, 259 F.R.D. at 334. Not surprisingly, Chiro One has not challenged Plaintiffs' contention that the claims of the class representatives are typical of those of the class. Indeed, Plaintiffs' claims and the claims of all potential class members arise from the same course of action by Defendant: the misclassification and the alleged failure to pay overtime. Further, the claims of Plaintiffs and the potential class also arise from the same legal theory: an alleged violation of the IMWL. The typicality requirement has been satisfied.

### 4. Adequacy of Representation

Before a class will be certified, Rule 23(a)(4) requires a plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement requires that the claims and interests of the named Plaintiffs not conflict with those of the class, that the class representatives have sufficient interest in the outcome of the case, and that class counsel are experienced and competent. *Retired Chicago Police Ass'n*, 7 F.3d at 598.

Defendant contends that Plaintiffs cannot adequately represent a class of CAs because neither worked as a CA. Putting aside the issue of whether a CT could represent a class including CAs—given the similarity of their job duties—there is evidence in the record that both

Kurgan and Diaz worked as CAs. Diaz testified in a declaration that she worked for a time as a CA. Although Defendant suggests that her declaration "contradicts" her deposition, Diaz was not asked whether she worked as a CA at her deposition. And Chiro One's own personnel documents demonstrate Diaz worked as a CA. Additionally, Chiro One ignores Kurgan's deposition to argue that she was never a CA (citing only to Kurgan's declaration, which does not discuss her work as a CA). During her deposition, which defense counsel presumably attended, Kurgan testified to working as a CA, and Chiro One's own personnel records demonstrate that Kurgan worked as a CA. Thus, Defendant's argument lacks a factual basis.

Chiro One's remaining arguments reflect both a factual and legal misunderstanding of Plaintiffs' IMWL class claim. For example, Chiro One suggests Plaintiffs are inadequate class representatives because they never "worked outside of Illinois, and they have provided no evidence that [CTs] in Texas or Kentucky share similar experiences." Since Plaintiffs' proposed IMWL class is limited to Illinois employees, Defendant's argument makes little sense. Chiro One also suggests that Plaintiffs are inadequate because, under the FLSA, the three-year statute of limitations is reserved for "willful" violations. [ECF No. 157, p. 11]. This argument fails because the IMWL—the claim that Plaintiffs seek to certify under Rule 23—has a three-year statute of limitation irrespective of whether the violation is "willful." See 820 ILCS 105/12(a). In short, each of the arguments advanced by Defendant in contesting the adequacy of the named Plaintiffs lacks either a factual or legal basis.

Plaintiffs have participated actively in the case, class counsel has experience bringing class-action claims under the IMWL, and there is no indication that the interests of the named Plaintiffs are antagonistic to those of the other class members. The adequacy requirement is met.

**B.      Rule 23(b)(3)**

Next, Plaintiffs argue that the proposed class satisfies the requirements set forth in Rule 23(b)(3). As set forth above, Rule 23(b)(3) permits class certification where common questions of law and fact predominate over individualized questions, and where a class action is superior to other available methods of resolving the controversy.

### 1. Predominance

The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Although related to the commonality requirement found in Rule 23(a), "the predominance criterion is far more demanding." *Id.* at 624. A party meets the predominance requirement if she can show that "'common questions represent a significant aspect of [a] case and * * * can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815 (quoting 7AA Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed. 2011)). "'If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.'" *Messner*, 669 F.3d at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

Defendants contend that the predominance requirement of Rule 23(b)(3) is not satisfied "because damages among the proposed class can only be resolved on an individual basis." However, where liability can be established as a common issue, individualized damage issues do not necessarily preclude certification. See *Butler*, 727 F.3d at 801; *Messner*, 669 F.3d at 815 ("[T]he presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."). In fact, the Ninth Circuit recently reversed a district court with

instructions to grant class certification in a wage and hour case, holding that the court abused its discretion and "used the wrong standard" when it denied certification on the basis that damages calculation would be individual. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013). The court confirmed that "damage calculations alone cannot defeat certification." *Id*. Thus, a class can satisfy predominance based on common questions regarding liability notwithstanding the need for individualized damage calculations. See *Arreola*, 546 F.3d at 801 ("need for individual damages determinations does not, in and of itself, require denial of his motion for certification."). Indeed, "[i]f the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." *Butler*, 727 F.3d at 801; *Healy v. Int'l Bhd. of Elec. Workers, Local Union No. 134*, --F.Supp.2d.--, 2013 WL 4494685, *10 (N.D. Ill. Aug. 22, 2013) ("*Comcast* does not come close to saying, as defendants suggest, that a class cannot be certified whenever there are variations among class members' damages.").

Certainly a plaintiff's theory of damages must flow from the theory of liability—*i.e.*, the plaintiff must seek damages that are "the result of the wrong" (*Comcast*, 133 S.Ct. at 1434)—but that requirement is satisfied here. Plaintiffs' theory of liability is that Defendant unlawfully refused to pay CTs overtime pay as required under the IMWL. "[T]here is no possibility in this case that damages could be attributed to acts of defendants that are not challenged on a class-wide basis;" all members of the class attribute their damages to Chiro One's decision to classify them as exempt. See *Butler*, 727 F.3d at 800. Further, if this finding is made, then Defendant also likely violated the record keeping requirements of the IMWL. 29 U.S.C.A. § 211(c) (employers must keep accurate records of non-exempt employees' work hours); 820 ILCS 105/8

(same). If this is the case, then class members may be entitled to a relaxed standard of proof in establishing their damages. See *Drive*r, 2012 WL 689169, *3 (a relaxed standard of proof applies when an employer fails to keep the records required by the IMWL). In other words, the classwide determination of the exemption issue will not only determine whether Defendant is liable, it also may aid in resolving damages.

The IMWL claim alleged here arises from a uniform type of alleged violation by Defendant, namely, a common practice of exempting CTs from overtime. At this stage, the damages issues—if they are reached—appear manageable. Juxtaposed against common liability questions such as those in this case, the mere fact of individualized damage issues does not defeat predominance. *Rosario v. Valentine Avenue Discount Store Co.*, Inc., 2013 WL 2395288, *8-9 (E.D.N.Y. May 31, 2013). (While each class member will have different damages depending on the length of time they were employed, the wages they received, and the hours they worked, such questions do not defeat predominance.). Where, as here, the focus is on liability-imposing conduct of the defendant that is identical as to all putative plaintiffs, the predominance element is satisfied. *Butler*, 727 F.3d at 801 (confirming, post-*Comcast*, individual damages do not preclude class certification); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298-301 (3rd Cir. 2011).

### 2. *Superiority*

The second prong of Rule 23(b)(3) is satisfied when it is shown that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs allege that a class action would allow for consistency of judgments, and that judicial economy and efficiency would dictate a certification of this class. The Court agrees that in this instance, a class action is the superior method. Although the damages questions for members of

the class may vary, the liability determination is best adjudicated once, in the class form. And, as already set forth in detail, individualized damage claims do not render class actions inappropriate. See *Butler*, 727 F.3d at 801 ("If issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."). Plaintiffs' proposed class satisfies the superiority requirement.

In sum, Rule 23(b)(3) is satisfied. Common questions of law or fact predominate over questions affecting only individual members, and a class action is superior to the available methods for the fair and efficient adjudication of the controversy.

### C.    Mootness

Defendant admits that its settlement offers could not moot Plaintiffs' case if a motion for class certification was pending when their July 16, 2013 offers were made. To get around that fact, Defendant twists the record to argue that no certification motion was pending at that time. Defendant's argument is disingenuous and ignores direct communication from the Court regarding its practice when the parties do not brief class certification motions in a timely manner.[2]

Plaintiffs originally filed their certification motion on June 22, 2012. At the Court's request (because neither side had briefed the motion), Plaintiffs re-filed their certification motion on February 15, 2013. On February 19, 2013, the Court withdrew the original certification

---

[2] In almost every case of this nature in the Seventh Circuit, counsel for Plaintiffs file a motion for class certification in the early stages of the case – often with the complaint itself – to comply with the Seventh Circuit's decision in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011). In many instances, the motions are withdrawn shortly after the initial status hearing because defendants are willing to enter into a stipulation that they will not attempt to "pick off" the named plaintiff in an early settlement. No such stipulation was entered into in this case. When stipulations are not reached, parties generally are willing to periodically refile the motion until they are ready to set a briefing schedule. That is the procedure that was followed in this case. At all times between June 22, 2012 and today, a motion for class certification has been pending in this case.

motion, and granted Plaintiffs leave to re-file. The Court specifically noted that Plaintiffs' motion had been re-filed, referencing "Doc. [121]" and stating "[a]ll previously filed briefs on motion to certify class will remain in place." Plaintiffs filed their current amended motion for collective and class certification on August 26, 2013, and on August 29, 2013, the Court struck Plaintiffs' February 15, 2013 motion. Defendant's claim that there was no certification motion pending on July 16, 2013 is further contradicted by Judge Keys' March 1, 2013 minute entry that states: "There is a pending motion to certify class [121] before the District Court Judge." The February 15 motion remained pending until it was stricken *after* Plaintiffs filed their amended motion. Because a certification motion was pending at all relevant times, the class allegations in this case could not be mooted by Defendant's offers. See *Greisz v. Household Bank (Illinois)*, N.A., 176 F.3d 1012, 1015 (7th Cir. 1999).

## IV. Conclusion

For these reasons, the Court grants Plaintiffs' amended motion for collective and class certification [144]. The Court grants conditional certification of the FLSA's claims and certifies Plaintiffs' IMWL claims for class treatment under Rule 23. This matter remains set for status at 2:00 p.m. on March 11, 2014. At that time the Court will address any questions or concerns with respect to the form of the notice. The parties are directed to submit a joint status report no later than March 7, 2014.

Dated: February 19, 2014

_____
Robert M. Dow, Jr.
United States District Judge