**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MONICA KURGAN and MADELINE DIAZ, on behalf of themselves and others similarly situated, | ) ) ) | Case No. 10-cv-1899 |
| Plaintiffs, | ) ) ) | consolidated for all purposes with Case No. 11-cv-4723 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| CHIRO ONE WELLNESS CENTERS LLC, MEDULLA LLC, DR. STUART BERNSEN, DR. SAM WANG, JAMIE HACKET, DR. MARK LAGERKVIST, MONICA POSH, and DR. BRIAN RUTECKI, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' petition for attorneys' fees and costs [264]. For the reasons stated below, the Court grants in part Plaintiffs' petition for attorneys' fees and costs [264] and awards Plaintiffs' counsel $174,423.25 in attorneys' fees and $5,065.47 in costs, for a total award of $179,488.72.

**I.      Background**

This consolidated action encompasses two initial complaints. In the first-filed action, Case No. 10-cv-1899, named Plaintiffs Kurgan and Diaz sued Defendant Chiro One Wellness Centers LLC, alleging claims under the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"), seeking to recover unpaid overtime wages. The later-filed action, Case No. 11-cv-4723, raised the same claims, and was brought by named Plaintiffs Wallace and Effort against Chiro One and several Chiro One employees.

Not long after the second case was filed, Defendant Chiro One brought a motion to consolidate the two cases pursuant to Federal Rule of Civil Procedure 42 and to reassign the *Wallace* case to this Court based on its relation to the lower-numbered *Kurgan* case. [See 52.] This Court granted the motion [56] and on September 20, 2011, entered orders on the dockets of both cases—[59 in *Kurgan* and 12 in *Wallace*]—indicating that the cases were to be "consolidated for all purposes" and that the later-filed *Wallace* action would be "dismissed." The order in the *Wallace* case further directed that "[a]ll future pleadings" should be filed on the *Kurgan* docket. The Plaintiffs filed a consolidated complaint shortly thereafter, on September 15, 2011. [58.] On February 19, 2014, the Court granted Plaintiffs' amended motion for collective and class certification. [175.] Post-dating the present motion, Plaintiffs filed a Third Amended Class/Collective Action Complaint [276] adding an alleged successor entity and several additional individual Defendants.

In July 2013, after approximately two years of often-contentious litigation following the consolidation of the two cases, two of the four named Plaintiffs—Wallace and Effort—accepted Defendants' Rule 68 offers of judgment, whereby Wallace and Effort received $60,417.00 and $35,540.37 respectively, "plus attorneys' fees, costs, and expenses as determined by the Court." [138.] The offer of judgment resolved "all causes of action alleged" in Plaintiffs' complaint, and "represents the total amount Defendants shall be obligated to pay on account of any liability claimed" in the complaint. [138-1, 2.] Named Plaintiffs Kurgan and Diaz—and dozens of opt-in Plaintiffs—continue to litigate the collective and class action against Defendants.

Plaintiffs' attorneys now seek to recover fees pursuant to the fee-shifting provisions in the FLSA and IMWL. The parties proceeded under Local Rule 54 in an attempt to resolve the fee award without judicial involvement, but one year and several motions later, the parties reached a

stalemate, and Plaintiffs filed the present motion. Plaintiffs allege that they are entitled to $317,567.80 in attorneys' fees and $10,130.94 in costs. [See 264.] Defendants object to Plaintiffs' demand, arguing, *inter alia*, that three law firms are attempting to obtain fees on behalf of Effort and Wallace when in fact only one of these firms actually represented those Plaintiffs, and that Plaintiffs' counsel are improperly seeking fees for their representation of all Plaintiffs, not just Effort and Wallace. Defendants assert that Plaintiffs are only entitled to $54,035.00 in attorneys' fees, and they offer no opinion regarding costs. [See 270.]

Of particular relevance to this motion is a dispute that arose during the Rule 54 proceedings concerning whether all three law firms represented Effort and Wallace for purposes of this petition. By way of background, the law firm Stephan Zouras, LLP originally represented Plaintiffs Effort and Wallace prior to the consolidation, and the law firms Bruckner Burch PLLC and Werman Law Offices, PC represented Plaintiffs Kurgan and Diaz. During the Rule 54 proceedings, Defendants sought to prevent Bruckner Burch and Werman Law Offices from receiving copies of Defendants' billing records, arguing that only Zouras, as counsel for Effort and Wallace, was entitled to such records. The Court disagreed, holding that "Plaintiffs are represented by all of the attorneys whose appearances on behalf of Plaintiffs in the consolidated cases (10-cv-1899 and 11-cv-4723) remain on file." [226.] Accordingly, all three firms now seek attorneys' fees on behalf of their consolidated efforts in representing Plaintiffs Effort and Wallace.

## II. Legal Standard

The FSLA directs courts to award reasonable attorneys' fees and costs to prevailing parties. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

3

defendant, and costs of the action."); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). Similarly, the IMWL states that a prevailing party "may recover * * * costs and such reasonable attorney's fees as may be allowed by the Court." 820 ILCS 105/12(a). The key factor in assessing an award of attorneys' fees is the reasonableness of the demand.

The framework for determining reasonableness is set forth by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). See *Spegon*, 175 F.3d at 550 (applying the *Hensley* framework to fee-award determinations under the FLSA). Under *Hensley*, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," often referred to as the "lodestar." 461 U.S. at 433; *Spegon*, 175 F.3d at 550. The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. See *Hensley,* 461 U.S. at 433. The district court has an obligation to "exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation. *Id.* at 434. The district court may then, at its discretion, increase or reduce the modified lodestar amount by considering a variety of factors. *Id.* at 434–35. If a district court elects to reduce a fee award, it must "provide a 'concise but clear explanation of its reasons.'" *Small v. Richard Wolf Medical Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999)). "In other words, the court cannot simply 'eyeball the fee request and cut it down by an arbitrary percentage because it seemed excessive to the court.'" *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996)).

### III. Analysis

#### A. Attorneys' Fees

The Court notes at the outset that Congress included the nondiscretionary fee-shifting provision into the FLSA in order to entice competent attorneys to prosecute what are often low-dollar wage claims. See 29 U.S.C. § 216(b); *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (noting that "Congress wants even small violations of certain laws to be checked through private litigation"). As a result, attorneys' fees in wage claims often exceed the amount in controversy. *Id.* ("Fee-shifting would not 'discourage petty tyranny' if attorney's fees were capped or measured by the amount in controversy." (quoting *Barrow v. Falck*, 977 F.2d 1100, 1103 (7th Cir. 1992))). In situations like this (*i.e.*, where Plaintiffs have requested fees that well-exceed the amount at issue), it is the Court's duty to engage in "increased reflection" on the parties' motions before awarding attorneys' fees. *Id.* at 546; *SKF USA Inc. v. Bjerkness*, 2011 WL 4501395, at *3 (N.D. Ill. Sept. 27, 2011). It is through this cautionary lens that the Court approaches Plaintiffs' petition.

Defendants do not dispute that Effort and Wallace are entitled to attorneys' fees; only the amount of fees is in dispute. The parties were unsuccessful in their attempts to reconcile their differences under the procedures set forth in Local Rule 54.3, which imposes on counsel the obligation to "confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded," and to exchange certain specified information. L.R. 54.3(d); see also *Jones v. Ameriquest Mortg. Co.*, 2008 WL 4686152 at *2 (N.D. Ill. May 19, 2008). Unable to reach an agreement, and in accordance with the local rule, Plaintiffs' counsel filed the instant motion [264], accompanied by a joint statement listing the disputed

issues [264-1]. See L.R. 54.3(e). The parties listed nine such disputes, several of which are duplicative, and all of which are addressed below.

> **1. Hourly Rates**

The first step in determining the lodestar is to assess the reasonableness of the attorneys' hourly rates. *Hensley*, 461 U.S. at 433 ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

Where, as here, the attorneys operate on a contingent-fee basis (and thus without a set hourly rate),[1] the next best metric for assessing the reasonableness of an attorney's hourly rate is the comparative market rate, which is defined as "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). "The burden of proving the market rate is on the applicant," *id.*, and "[w]hile an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services, such affidavits in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiffs' burden." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000). "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *People Who Care*, 90 F.3d at 1310.

Plaintiffs have requested fees that range from $125 to $600 per hour, spanning 15 attorneys and three law firms. Specifically, Bruckner Burch requests $450–$575/hr for partners

---

[1] Only the Werman Salas law firm provided evidence of their hourly rates when not operating on a contingent basis, noting that Mr. Werman and Ms. Salas's current hourly rates are $600/hr and $500/hr respectively, and their paralegals bill at a rate of $140/hr. Werman Salas alleges that these rates were charged in the matter *Guaranteed Rate, Inc. v. Lapham*, No. 12 C 6776 (N.D. Ill. 2012), where Werman Salas represented the defendant in a dispute by the defendant's former employer (*i.e.*, not an FLSA or IMWL matter).

and $125/hr for paralegals. Stephan Zouras requests $500/hr for partners, $250–$300/hr for associates, and $125/hr for paralegals. And Werman Law Offices requests $500–$600/hr for partners, $375/hr for associates, and $140/hr for paralegals.

Plaintiffs support these rates in three ways. First, Plaintiffs note the comparable skill, expertise, and reputations of the three law firms in question. And to be sure, these firms are all well-respected wage-and-hour advocates with vast experience in large-scale class and collective actions throughout the country. See, *e.g.*, *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) (Castillo, J.) (referring to Bruckner Burch as "qualified" and "highly experienced attorneys"). Second, Plaintiffs argue that their rates are within the prevailing market rates in Chicago for work of this nature, citing *Arriaga v. Elite Constr. Co., Inc.*, 2012 WL 3835835 (N.D. Ill. Sept. 4, 2012 (awarding lead counsel $500 per hour). Counsel also cites to the declaration of Jac Cotiguala [264-6], an experienced wage-and-hour attorney from the area, who says that the prevailing rates for work of this type in the Chicagoland area range from $150/hr to $900/hr, depending on the firm and the particulars of the attorney performing the work. Declarations from experienced local practitioners Jeffrey Kulwin [264-7] and Robin Potter [264-8] further endorse Plaintiffs' proposed rates as justified based on Plaintiffs' expertise and the market rates in Chicago.

Another metric for assessing the reasonableness of an attorney's hourly rate argued by Plaintiffs is the reasonableness of the rate based on rates approved in similar cases. See *De La Riva v. Houlihan Smith & Co., Inc.*, 2013 WL 5348323, at *5 (N.D. Ill. Sept. 24, 2013). A recent decision from this district surveyed other FLSA cases in this Circuit, finding that "district courts have not awarded an hourly rate higher than $450 in similar cases." *Johnson v. G.D.F., Inc.*, No. 07 C 3996, 2014 WL 463676, at *21 (N.D. Ill. Feb. 5, 2014); see also *De La Riva v. Houlihan*

*Smith & Co., Inc.*, 2013 WL 5348323, at *5 (awarding Jac Cotiguala $450/hr, his associate $300/hr, and his paralegal $90/hr); *Ingram v. World Security Bureau Inc.*, (awarding Mr. Zouras $425/hr, Mr. Ficzko $250/hr, and Mr. Goldstein $225/hr, noting that Mr. Zouras's experience was not tantamount to that of Mr. Werman, who recently received $500/hr in a similar case).

Once an attorney has met his burden with "evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded." *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001) (internal quotation marks and citation omitted). Defendants offer no objection to the reasonableness of Plaintiffs' counsel's hourly rates, and thus while the Court would be justified in adopting these rates as requested, see, *e.g.*, *Nilssen v. Gen. Elec.*, 2011 WL 633414, at *7 (N.D. Ill. Feb. 11, 2011) (stating that failure to object "may result in waiver of the objection" (citing *Hutchinson v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir. 1994))); *Zaghloul v. DaimlerChrysler Servs., LLC*, 2004 WL 2203427, at *2 (N.D. Ill. Sept. 29, 2004), the Court will nonetheless assess whether Plaintiffs' have met their burden of proving the reasonableness of the hourly rates claimed. See *Hensley,* 461 U.S. at 433.

While Plaintiffs' requested rates are well-endorsed, they nonetheless exceed the market rates in this district, and Plaintiffs' fail to provide adequate evidence substantiating such rates for these types of claims in the Chicagoland market. Accordingly, the Court will award founding partners Messrs. Burch and Werman $500/hr, and the slightly-less-experienced Mr. Zouras at $450/hr. Senior partners Messrs. Jones and Stephan and Ms. Salas will receive $400/hr. Associates will receive between $250/hr and $300/hr based on experience, and all paralegals will receive $100/hr. These rates are commensurate with local market rates, with slight adjustments upward based on Defendants' lack of opposition to Plaintiffs' requested rates.

| ATTORNEY | FIRM | POSITION | RATE/HR | ADJUSTED RATE/HR |
|---|---|---|---|---|
| Richard J. Burch | BB | Partner | $575 | $500 |
| James A. Jones | BB | Partner | $450 | $400 |
| Chris Guierri | BB | Paralegal | $125 | $100 |
| James Zouras | SZ | Partner | $500 | $450 |
| Ryan Stephan | SZ | Partner | $500 | $400 |
| Andrew Ficzko | SZ | Associate | $300 | $300 |
| Mark Goldstein | SZ | Associate | $250 | $250 |
| Andrea Moscarello | SZ | Paralegal | $125 | $100 |
| Irene Weber | SZ | Paralegal | $125 | $100 |
| Kerry Bowers | SZ | Paralegal | $125 | $100 |
| Douglas Werman | WS | Partner | $600 | $500 |
| Maureen Salas | WS | Partner | $500 | $400 |
| Dave Stevens | WS | Associate | $375 | $300 |
| Christina Calderon | WS | Paralegal | $140 | $100 |
| Jackie Villanueva | WS | Paralegal | $140 | $100 |

### 2. Number of Hours

Once a reasonable hourly rate is determined, the Court must then analyze the number of hours expended. *Hensley*, 461 U.S. at 433. "In determining the reasonable number of hours, [a] court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small*, 264 F.3d at 708 (quoting *Hensley*, 461 U.S. at 434). Further, "when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper*, 223 F.3d at 605; see also *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 651, 657–58 (7th Cir. 1985). A court may adjust the fee award upward or downward, depending on a variety of factors, see *Hensley*, 461 U.S. at 430 n.3, and "retains a great deal of discretion" in doing so. *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997).

### a. Which Lawyers Are Entitled to Fees?

As an initial matter, Defendants argue that the Zouras firm (and *only* the Zouras firm) represents Effort and Wallace, and thus only the Zouras firm is entitled to attorneys' fees under this petition. But the Court has already decided this issue in response to Defendants' Motion for Instruction, holding that "Plaintiffs are represented by all of the attorneys whose appearances on behalf of Plaintiffs in the consolidated cases (10-cv-1899 and 11-cv-4723) remain on file." [226.] Without repeating its reasoning, the Court reaffirms its prior ruling that all attorneys of record are entitled to submit fee petitions for post-consolidation work performed on behalf of Effort and Wallace, regardless of whether those firms affiliated themselves with other plaintiffs prior to the consolidation of the cases. See *Doe v. Howe Military Sch.*, 227 F.3d 981, 986 (7th Cir. 2000) (noting that an order consolidating multiple cases had "in effect merged them into a single action"); *Brown v. United States*, 976 F.2d 1104, 1107 (7th Cir. 1992) (noting that for purposes of Rule 54(b), "[w]here cases have been consolidated for all purposes, they become a single judicial unit").

### b. Which Fees Are Attributable to Effort and Wallace's Claims?

#### i. Fees Related to Effort and Wallace vs. Other Plaintiffs

Defendants argue that regardless of which attorneys are entitled to fees under this petition, those fees should be limited to the respective attorney's time spent representing Effort and Wallace and not the remaining plaintiffs. Plaintiffs counter by citing this Court's own language: "It is appropriate to consider the litigation as a whole, rather than viewing the specific claims atomistically, if 'the plaintiff's claims of relief * * * involve a common core of facts or [are] based on related legal theories,' such that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim

basis.'" *Catalan v. RBC Mortgage Co.*, 2009 WL 2986122, at *3 (N.D. Ill. Sept. 16, 2009) (Dow, J.) (quoting *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988)). But that quote is from a different context. Thus, while the Court reaffirms its opinion regarding the difficulty of dividing hours on a *claim-by-claim* basis where the claims arise from a common factual basis (as applied below), that principle does not apply with the same force to *plaintiff-by-plaintiff* delineations. And while retroactively dividing Plaintiffs' time entries between four similarly-situated plaintiffs would be a near-impossible task, it is quite simple to divide the fees on a pro rata basis. To wit, just as Effort and Wallace constitute 50% of the four named plaintiffs, so too should they be entitled to 50% of the fees required in representing the four named plaintiffs. See, *e.g.*, *Chapman v. Ourisman Chevrolet*, 2011 WL 2651867, at *17 (D. Md. July 1, 2011) (holding, in a similar situation, that "given the success of two of fourteen plaintiffs, the Court awards the proportional amount of one-seventh of Plaintiffs' attorney's fees").

Should Kurgan and Diaz prevail on their respective claims, Plaintiffs' attorneys will be entitled to reassert their claim for the withheld half of their requested fees (plus, of course, all reasonable fees occurred beyond the scope of this petition). But to be clear, Plaintiffs' award for the hours attributed to the representation of Effort and Wallace may not be re-billed in any future petitions (*i.e.*, no double billing). See, *e.g.*, *Gonyer v. Vane Line Bunkering, Inc.*, 2014 WL 3710144, at *4 n.3 (S.D.N.Y. July 25, 2014) ("It is likely that some of the work counsel performed on behalf of the [prevailing plaintiff] will be 'reused' for the newly added Plaintiffs. To the extent that attorneys' fees or costs for such work are awarded now as part of the judgment in favor of [the prevailing plaintiff], they will be deducted from future awards.").

ii.     Fees Related Individual Claims vs. Class Claims

Defendants lodged several arguments aimed at excluding certain fees related to Plaintiffs' time spent in connection with their three class-certification motions [98 (June 22, 2012), 121 (Feb. 15, 2013), 144 (Aug. 26, 2013)]. Defendants' arguments rely on the principle that where "a plaintiff prevails on only some of his interrelated claims, * * * the 'district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (quoting *Hensley*, 461 U.S. at 436–37). For the reasons explained below, Defendants' arguments are unavailing.

First, Defendants argue that Effort and Wallace are only entitled to fees for claims on which they "prevailed," and because the offer of judgment settled only their individual claims, they are not entitled to any fees relating to Plaintiffs' class-certification motions. Only a prevailing party is entitled to an award of attorneys' fees under the FLSA or the IMWL. 29 U.S.C. § 216(b) (2011); 820 ILCS 105/12(a) (2011). A "prevailing party" is one who has "achieved some success on the merits and can point to a resolution that has changed the legal relationship between herself and defendant." *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 595 (7th Cir. 1999); *Hensley*, 461 U.S. at 433. A plaintiff who favorably settles his claims is considered a prevailing party. *See* 29 U.S.C. § 216(b); *Small*, 264 F.3d at 707 ("Prevailing plaintiffs, which may include plaintiffs who favorably settle their cases, are entitled to reasonable attorney's fees under the FLSA.").

Here, Effort and Wallace accepted offers of judgment resulting in entry of judgment in their favor on "all causes of action alleged" in Plaintiffs' complaint—including their right to participate in the putative class—thus providing Effort and Wallace with "the total amount Defendants shall be obligated to pay on account of any liability claimed" in the complaint. [138-

12

1, 2.] Effort and Wallace are prevailing parties as contemplated by the FLSA and IMWL with respect to all claims asserted in this federal action (which, notably, was brought as a collective action), and thus are entitled to reasonable attorneys' fees for counsel's efforts for class certification, which were made pursuant to such claims. Even if Plaintiffs' class claims were deemed to be separate claims, there is a common core of facts and related legal theories binding the class claims to the individual claims, such that the Court considers the litigation as a whole. *Hensley*, 461 U.S. at 435; see also *Ustrak*, 851 F.2d at 988; *Sommerfield v. City of Chicago*, 2012 WL 5354987, at *7 (N.D. Ill. Oct. 29, 2012).

Second, Defendants note that while Effort was a party to Plaintiffs' first two motions for class certification [98, 121], Wallace was not. Defendants assert that they are entitled to a reduction based on the fact that Wallace never moved for class certification. But again, as stated above, the Court considers Plaintiffs' class-based and individual claims as a whole, such that work performed in connection with the class benefitted Effort and Wallace individually. Accordingly, Wallace's absence from Plaintiffs' class-certification motions does not bar his ability to recover fees in preparing those motions.

Third, Defendants argue that Effort and Wallace are not entitled to any fees relating to Plaintiffs' third motion for class certification [144 (Aug. 26, 2013)] because it was filed after Effort and Wallace accepted Defendants' offers of judgment [138 (Aug. 1, 2013)]. Defendants are correct; this petition does not cover any fees or costs associated with the preparation of Plaintiffs' third motion for class certification that post-date Effort and Wallace's acceptance of their offers of judgment. However, Plaintiffs note that "none of the time records for which Plaintiffs' counsel seek reimbursement contain any time spent" on Plaintiffs' third motion for class certification, meaning that no reduction is necessary.

### c. *Vague or Inadequately Documented*

Defendants argue that they should not be required to pay for time entries that are vague, inadequately documented, or otherwise improper. When a fee petition is "vague or inadequately documented, a district court may either strike the problematic entries * * * or reduce by a reasonable percentage." *Harper*, 223 F.3d at 604.

Defendants object that many of Plaintiffs' invoices contain vague entries (*e.g.*, three-word descriptions) that prevent Defendants' from assessing the propriety of the entry. However, Defendants do not provide detail as to which, or how many, entries it disputes, and instead "respectfully submit that this is not a situation that demands a line-by-line analysis by the court of Plaintiffs' invoices." Plaintiffs agree with Defendants that some of its time entries are vague, and in response voluntarily reduced certain time entries by 30%. Specifically, Plaintiffs claim that they applied this reduction to all entries where Defendants lodged a specific objection of "vague" that reflect conversations among co-counsel or emails between co-counsel where the precise subject matter either was not stated or, according to Plaintiffs, was not conveyed from the context of the time entry. It is unclear what effect this 30% reduction had on Plaintiffs' overall fee request, nor is it clear how many of the total objected-to entries received this 30% reduction. Absent any direction from Defendants as to which entries are vague or why Plaintiffs' voluntary reduction of 30% is insufficient, the Court is inclined to accept Plaintiffs' self-implemented reduction as sufficient. See *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 736 (7th Cir. 2010) (noting that district courts are not "obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness").

Defendants also object that Plaintiffs should not receive compensation for improperly redacted time entries, noting that portions of Plaintiffs' invoices submitted during the Rule 54.3

proceedings were improperly redacted. Local Rule 54.3(d)(5)(A) says that time records may "be redacted to prevent disclosure of material protected by the attorney–client privilege or work product doctrine." Although the rule does not require the redacting party to submit a privilege log, redactions should be limited to the extent necessary to protect the privilege while, to the extent possible, maintaining the opposing party's ability to determine the reasonableness of the entry. *Cuff v. Trans States Holdings, Inc.*, 2013 WL 140607, at *3 (N.D. Ill. Jan 11, 2013). Upon review of the redacted entries in question—most of which pertain to Richard J. Burch's time entries—the Court finds that the unredacted portions of these entries provide sufficient context to show that these entries do in fact relate to the claims at issue in this petition. Accordingly, the Court will not assess any further reductions based on Plaintiffs' redacted time entries.

### d. *Proportionality*

Defendants argue that Plaintiffs' proposed fee award (approximately $317,000) is disproportionate to the total amount recovered by Effort and Wallace (approximately $96,000, yielding a ratio of just over 3:1), and thus should be reduced. Because the Court has reduced the fee request by 50%, that ratio is closer to 2:1.

Regardless, the Supreme Court has explicitly rejected a proportional reduction in fees based on the dollar amount recovered. *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986). Similarly, the Seventh Circuit has "repeatedly rejected the notion that [attorneys'] fees must be calculated proportionally to damages." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (quoting *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048 (7th Cir. 1999)). A two-to-one ratio of fees to overall recovery is reasonable, especially in the FLSA and IMWL context. See *Anderson*, 578 F.3d at 545 ("Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no

15

surprise that the cost to pursue a contested claim will often exceed the amount in controversy." (citation omitted)). No reduction is warranted on this basis.

### e. *Fees on Fees*

There is no hard and fast rule in assessing a prevailing party's ability to recover fees expended on preparing a fee petition. The Seventh Circuit has not adopted a bright-line test for what is considered "reasonable" in this context, but has noted that "[o]ne factor we consider[] in determining the reasonableness of those hours [is] the comparison between the hours spent on the merits and the hours spent on the fee petitions." *Spegon*, 175 F.3d at 554. "The relevant inquiry with respect to this determination is 'whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits.'" *Batt*, 241 F.3d at 894 (quoting *Spegon*, 175 F.3d at 554).

While the exact number of hours is unclear, Defendants allege that Plaintiffs seek more than $69,000 for litigating their fee petition. Defendants argue that this fee exceeds 20% of Plaintiffs' entire fee petition, and is thus excessive, citing *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 992–93 (N.D. Ill. 2012) (finding 20% to be excessive); see also *Ustrak*, 851 F.2d at 987–88 (finding 25% to be excessive). One notable difference between *Gibson* and the present matter is that the parties in *Gibson* did not proceed under Local Rule 54.3 in negotiating their fee arrangement, whereas here the parties did attribute some amount of time to these local procedures. The Court recognizes the irony in that Local Rule 54.3 exists "as a means of reducing the time spent on fee disputes," *Sears, Roebuck & Co. v. Menard, Inc.*, 2004 WL 2423964, at *1 (N.D. Ill. Sept. 23, 2004), but here the procedure has resulted in an increase in costs. Notably, much of Plaintiffs' time spent preparing this fee petition was instigated by Defendants (*e.g.*, filing two motions for instruction [167, 203], refusing to produce billing records [see 177, 183, 189], attempting to bar access to its billing records [189], etc.). While the

Seventh Circuit has repeatedly frowned upon the fact that "lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue," *Spegon*, 175 F.3d at 554 (quoting *Ustrak*, 851 F.2d at 987–88), here it is the Defendants who have generated the lion's share of the litigation efforts during the fee-petition process, thereby justifying Plaintiffs' notably disproportionate fee request.

The Court also notes that the core dispute between the parties as it relates to this fee petition stems from the fact that the petition—involving multiple plaintiffs jointly represented by three separate law firms—was brought *in medias res* (*i.e.*, with two named plaintiffs still litigating), and that many of these disagreements likely could have been avoided if Plaintiffs' counsel had waited until the full resolution of the matter to bring their petition. Nonetheless, the Court finds Plaintiffs' $69,000 fee demand to be reasonable in light of both the hours spent litigating the merits of the case and the procedural hurdles (many of which were put in place by Defendants) involved in filing this petition. Because the fee petition relates only to Effort and Wallace, the Court approves the full amount, without reduction. Plaintiffs will not be entitled to any additional fees relating to this particular fee petition that have not already submitted.

### f. *Adjusting the Lodestar*

After calculating the lodestar, the Court may, at its discretion, increase or reduce the modified lodestar amount by considering a variety of factors, including: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the

17

nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3. The Court already accounted for many of these factors (*e.g.*, the customary fee, the results obtained, awards in similar cases, etc.) in determining the lodestar, and thus the Court will not revisit those factors here. See *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 647 (7th Cir. 1995) ("The Supreme Court noted in *Hensley* that many of the twelve factors considered when contemplating the award of attorneys' fees usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, and thus should not be considered a second time when modifying the lodestar amount." (internal quotation marks omitted)). After careful consideration of the *Hensley* factors, the Court determines that no additional adjustments to the lodestar are necessary.

As a further gauge of the reasonableness of the Court's assessment of Plaintiffs' fee petition, the Court reviews Plaintiffs' counsel's total hours expended in this litigation in comparison to Defendants' total hours, with the understanding that "it is well known that in most cases it takes more time to prepare and try a case on the plaintiff's behalf than it takes to defend." *Pisut v. Pasavare, Inc.*, 2005 WL 1138638, at *1 (N.D. Ill. Apr. 29, 2005). According to Defendants' billing records produced in conjunction with the parties Local Rule 54.3 proceedings, Defendants counsel billed 1061.25 hours during the same period in which Plaintiffs' counsel seek recovery of 690.05 hours. Defendants offer no explanation for this discrepancy, and thus are in no position to argue that Plaintiffs' counsel's time spent representing Effort and Wallace was unreasonable.

### g. *Calculation*

In their instant motion [264], Plaintiffs' seek fees for 690.05 hours, totaling $317,754.70. However, the numbers that Plaintiffs provided in their illustrative chart total 687.38 hours and

$317,567.80. A similar chart included in the parties Rule 54.3 statement [264-1] lists the same totals (690.05 hours and $317,754.70), but the numbers provided in the chart add up to 697.05 hours and $319,066.60. The Court bases its calculations off of the lowest-sum numbers—namely, those provided in the chart in the instant motion [264]—applying the adjusted hourly rates listed above:

| ATTORNEY | FIRM | HOURS | ADJUSTED RATE/HR | TOTAL |
|---|---|---|---|---|
| Richard J. Burch | BB | 99.92 | 500.00 | $49,960.00 |
| James A. Jones | BB | 351.76 | 400.00 | $140,704.00 |
| Chris Guierri | BB | 30.00 | 100.00 | $3,000.00 |
| James Zouras | SZ | 108.07 | 450.00 | $48,631.50 |
| Ryan Stephan | SZ | 4.83 | 400.00 | $1,932.00 |
| Andrew Ficzko | SZ | 18.70 | 300.00 | $5,610.00 |
| Mark Goldstein | SZ | 6.40 | 250.00 | $1,600.00 |
| Andrea Moscarello | SZ | 0.90 | 100.00 | $90.00 |
| Irene Weber | SZ | 1.20 | 100.00 | $120.00 |
| Kerry Bowers | SZ | 1.75 | 100.00 | $175.00 |
| Douglas Werman | WS | 46.18 | 500.00 | $23,090.00 |
| Maureen Salas | WS | 3.67 | 400.00 | $1,468.00 |
| Dave Stevens | WS | 10.33 | 300.00 | $3,099.00 |
| Christina Calderon | WS | 0.83 | 100.00 | $83.00 |
| Jackie Villanueva | WS | 2.84 | 100.00 | $284.00 |
| **TOTALS** | | **687.38** | | **$279,846.50** |

Because the Court is awarding Effort and Wallace's counsel the full $69,000 in fees associated with the fee-petition litigation, those fees are not subject to the 50% reduction, while the remainder ($210,846.50) is subject to the 50% reduction (*i.e.*, $105,423.25). Adding back the $69,000, Plaintiffs are entitled to a grand total of $174,423.25 in attorneys' fees, which the Court now awards. Again, nothing shall preclude Plaintiffs' counsel from seeking the disallowed fees (*i.e.*, the withheld $105,423.25) should Kurgan and Diaz prevail on their claims at some point in the future.

### B. Costs

Plaintiffs seek $10,130.94 in costs and expenses, and Defendants do not challenge these costs. Plaintiffs have properly itemized these costs in their fee petition, and the entries appear to relate to the advancement of the merits of this matter. Accordingly, the Court finds these costs to be reasonable. See, *e.g.*, *Rasic v. City of Northlake*, 2010 WL 3365918, at *11 (N.D. Ill. Aug. 24, 2010) (awarding costs in full where the request was adequately supported and defendants posed no objection). However, once again, because these costs relate to counsel's representation of all four named Plaintiffs, counsel is only entitled to half of these costs at this time. The Court awards Plaintiffs' counsel $5,065.47 in costs.

### III. Conclusion

For the foregoing reasons, Plaintiffs' petition [264] is granted in part, and Plaintiffs are awarded $5,065.47 in costs and $174,423.25 in attorneys' fees, for a total award of $179,488.72. As noted above, this ruling is without prejudice to Plaintiffs seeking to recover in a subsequent petition (*i.e.*, should Kurgan or Diaz become a "prevailing party") the fees and costs disallowed by the Court at this time.

Dated: December 22, 2014

_____
Robert M. Dow, Jr.
United States District Judge